1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 THE ESTATE OF ELISA SERNA, et al., | Case No. 20cv2096-LAB-MSB |
| 12          Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS PORTIONS OF AMENDED COMPLAINT [Dkt. 22]** |
| 13      v. | |
| 14 COUNTY OF SAN DIEGO, et al. | |
| 15          Defendants. | |

16
17

18      Elisa Serna died at the Las Colinas Detention Facility on November 11,

19  2019. She had been in custody for five days. Five plaintiffs brought this action

20  seeking to impose liability for her death: Serna's estate (the "Estate"); her

21  widower, Brandon Honeycutt; her minor child, S.H., through her alleged

22  guardian *ad litem*, Paloma Serna; and her parents, Michael and Paloma

23  Serna. Their First Amended Complaint ("FAC") asserts nine causes of action

24  against nine defendants.

25      Defendants County of San Diego, Sheriff William Gore, Barbara Lee,

26  Lorna Roque, Danalee Pascua, and Hazel Camama (collectively, "Movants")

27  moved to dismiss each of the claims against them. (Dkt. 22).

28      The Motion is **GRANTED IN PART** and **DENIED IN PART**. The Court

**DISMISSES** the following claims:

1) The FAC's first through sixth causes of action against all Doe defendants, **WITHOUT PREJUDICE**;

2) The FAC's fourth and fifth causes of action against Defendants Gore and Lee, **WITHOUT PREJUDICE**;

3) The FAC's seventh cause of action, insofar as it seeks punitive damages against the County, **WITH PREJUDICE**;

4) The FAC's seventh and eighth causes of action against Defendants Gore and Lee, **WITHOUT PREJUDICE**;

5) The FAC's ninth cause of action, insofar as it is brought by any Plaintiff other than the Estate, **WITH PREJUDICE**, and insofar as it is brought by the Estate against Gore and Lee, **WITHOUT PREJUDICE**.

## BACKGROUND

Las Colinas Detention Facility is a detention center for inmates in the custody of the County of San Diego.[1] The County's custodial employees and staff work under the supervision of Sheriff William Gore, and its medical and nursing staff work under Medical Administrator Barbara Lee.

Elisa Serna died in a cell at Las Colinas on November 11, 2019 sometime between 7:00 p.m. and 8:07 p.m. She had been admitted to the County's custody at Las Colinas five days before. Upon admission, she reported that she was addicted to heroin and alcohol and that she had used both substances and Xanax two hours before booking. Serna was nauseous, vomiting, and exhibiting symptoms of dehydration, but she didn't receive any

---

[1] The FAC does not allege this fact, alleging instead that the County operates and manages the San Diego Central Jail, a facility apparently unrelated to his action. (FAC ¶ 11). Nevertheless, for the purposes of this order only, the Court takes judicial notice that the County houses inmates at Las Colinas because it is a fact generally known within this District. *See* Fed. R. Evid. 201(b)(1).

treatment for withdrawal until she first saw a doctor four days after entering the facility.

Eighteen hours before Serna died, nurse Hazel Camama saw her. She noted that Serna had self-induced vomiting, had a dysphoric affect, was yelling that she couldn't walk, and had low blood pressure. (*Id.* ¶¶ 42–44). Camama "did nothing to provide medical care." (*Id.* ¶ 45).

Eleven hours before Serna died, nurse Lorna Roque saw her. She noted an "abnormal vital reading," including abnormally low blood pressure. (*Id.* ¶ 47–48). Serna's nausea was leading to her induce vomiting. (*Id.* ¶ 49).

Six hours before Serna died, Dr. Friederike C. Von Lintig saw her. Serna had been transferred to a Medical Observation Bed ("MOB") due to fainting. (*Id.* ¶ 52). Von Lintig wrote that staff suspected Serna was "staging her 'fainting spells' for secondary gain purposes." (*Id.* ¶ 53.) Von Lintig declined to take Serna's vitals, refused to provide the IV that Serna requested due to her vomiting, and transferred Serna back out of MOB and into "Main Line" housing. (*Id.* ¶¶ 54–55). Twenty minutes later, after Serna "stiffened her body" while sitting in a wheelchair and "was not verbally responsive," staff observed that her oxygen level was 87%, well below the normal minimum of 95%. (*Id.* ¶ 56–58). Von Lintig promptly saw Serna once more, "doubt[ing]" that the stiffening of Serna's body was a "true seizure" and "suspect[ing] second gain"—in other words, she believed Serna was faking her symptoms. (*Id.* ¶¶ 60–62, 64). Von Lintig didn't examine Serna, didn't take blood tests, again didn't take Serna's vitals, and didn't continue Serna's treatments for withdrawal. (*Id.* ¶¶ 63, 70–71). Nevertheless, she returned Serna to MOB.

Four hours before Serna died, Roque saw her again. She noted that Serna's blood pressure had fallen further, but didn't notify a doctor or take other action. (*Id.* ¶¶ 72–73).

At 7:00 p.m. on November 11, 2019, nurse Danalee Pascua responded to a call to check on Serna "after someone saw [her] slide down a wall into a sitting position." (*Id.* ¶ 75). Serna sat on the ground, eyes closed, tensing her arms, and breathing slowly. (*Id.* ¶ 76). Pascua didn't take her vital signs or provide medical care. (*Id.* ¶¶ 77–78). Serna was found dead in her cell 67 minutes later. (*Id.* ¶ 80).

Serna's estate, her widowed husband, her minor daughter through alleged guardian *ad litem* Paloma Serna, and her parents brought this action. As relevant to this motion, they assert the following claims:

1) Against Roque, Pascua, and Camama (the "Nurses"), deliberate indifference to serious medical needs in violation of Serna's Fourteenth Amendment rights and 42 U.S.C. § 1983;

2) Against the Nurses, wrongful death in violation of Serna's "civil rights" and 42 U.S.C. § 1983;

3) Against the Nurses, violation of Serna's rights of association under the First and Fourteenth Amendments and 42 U.S.C § 1983;

4) Against Gore and Lee, failure to properly train resulting in a violation of Serna's constitutional rights and 42 U.S.C. § 1983;

5) Against Gore and Lee, failure to properly supervise and discipline resulting in a violation of Serna's constitutional rights and 42 U.S.C. § 1983;

6) Against the County, municipal liability for violation of Serna's constitutional rights and 42 U.S.C. § 1983;

7) Against the County, Gore, Lee, and the Nurses, wrongful death;[2]

---

[2] The Court previously dismissed the seventh cause of action insofar as it: 1) seeks to assert any claim other than wrongful death, without prejudice; 2) purports to be a wrongful death claim brought by anyone other than Serna's widower, Brandon Honeycutt, with prejudice; and 3) purports to be a survival action brought on behalf of anyone other than the Estate, with

8) Against the County, Gore, Lee, and the Nurses, negligence; and

9) Against the Nurses and the County, violation of the Bane Act, Cal. Civ. Code § 52.1.

Except for the sixth cause of action for municipal liability, each of these claims is asserted against Doe defendants, as well.

The County, Gore, Lee, and the Nurses moved to dismiss each claim against them.

## DISCUSSION

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It's not enough, as Plaintiffs argue, for the complaint to provide "fair notice of the substance of [a] claim." Dkt. 19 at 1. The requirement that the pleading "show[] that the pleader is entitled to relief" encompasses not only notice, but a viable legal theory. *See* Fed. R. Civ. P. 8(a). As a result, even where a pleading alleges sufficient facts and identifies a legal theory that the plaintiff intends to pursue, a court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) where that theory isn't cognizable. *See Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008) (Rule 12(b)(6) dismissal appropriate "where the complaint lacks a cognizable legal theory").

## I.    Plaintiffs Have Satisfied the Procedural Requirements to Assert Claims on Behalf of the Estate and S.H.

Movants first contend that the claims of the Estate and S.H. must be dismissed for failure to comply with the procedural requirements for filing suit on behalf of a decedent's estate and a minor, respectively. They are mistaken.

A person may commence or continue an action or proceeding as a

---

prejudice. (Dkt. 27). All that remains in the FAC, then is a wrongful death claim brought by Honeycutt.

decedent's successor-in-interest by filing an affidavit meeting the requirements of Cal. Code Civ. Pro. § 377.32. As relevant here, "[a] certified copy of the decedent's death certificate shall be attached to the affidavit." Cal. Code Civ. Pro. § 377.32(c). Honeycutt, S.H., and Paloma Serna filed the required affidavits, but failed to include the death certificate. (Dkt. 8; Dkt. 9). Paloma Serna subsequently filed a sworn declaration attaching that document. (Dkt. 23-2). Movants insist that, because Honeycutt and S.H. haven't themselves filed a death certificate, they haven't complied with Section 377.32. But under California law, "[w]here there is compliance as to all matters of substance, technical deviations are not to be given the stature of noncompliance. Substance prevails over form." *Manderson-Saleh v. Regents of Univ. of Cal.*, 60 Cal. App. 5th 674, 701 (2021). Plaintiffs don't need to prove Serna's death in triplicate—once is enough.

Movants next argue that Paloma Serna failed to seek appointment as *guardian ad litem* to S.H. They contend that Plaintiffs haven't filed "*any* supporting paperwork regarding the propriety of Paloma Serna [serving in that role]—notwithstanding S.H.'s biological father's presence as a party in this suit." (Dkt. 24 at 2). Movants are wrong. Under Fed. R. Civ. P. 17(c), "a general guardian" "may sue . . . on behalf of a minor." Paloma Serna filed a sworn declaration stating that she is the court-appointed legal guardian for S.H., a role she has served in since May 31, 2016. (Dkt. 9). Why she, and not Honeycutt, serves in that role isn't relevant under Rule 17(c).

## II.   The FAC's Federal Claims against Doe Defendants Aren't Sufficiently Pled

Next, Movants argue that the claims against the 100 Doe Defendants must be dismissed for lack of allegations specific to any of those Defendants. "A plaintiff may refer to unknown defendants as [a Doe]." *Keavney v. Cty. Of San Diego*, Case No. 3:19-cv-019472020 WL 4192286, at *4–5 (S.D. Cal.

July 21, 2020). Federal courts have dismissed claims against such defendants, though, when the pleading doesn't "even minimally explain how any of the unidentified parties he seeks to sue personally caused a violation of his constitutional rights." *See, e.g., Cavanaugh v. County of San Diego*, Case No. 3:18-cv-02557-BEN-LL, 2020 WL 9703592 at *25, n.20 (S.D. Cal. Nov. 12, 2020).

But where state claims are involved, California's fictitious name statute permitting the pleading of Doe defendants tolls the statute of limitations on those claims, and so it is substantive law that the Court is bound to apply. *Lindley v. General Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986). Under that statute, a plaintiff may name Doe defendants when he doesn't know the true name of a defendant *or* the facts giving him a cause of action against a defendant. *Munoz v. Purdy*, 91 Cal. App. 3d 942, 947 (1979).

The FAC makes only cursory and conclusory allegations against the Doe defendants, admitting frankly that "Plaintiffs are truly ignorant . . . of the facts giving rise to [the Doe defendants'] liability." (FAC ¶ 18; *see also id.* ¶¶ 192, 198–200, 235). That's enough for the state law claims, but not for the federal claims. The Motion is **GRANTED IN PART** as to the federal law claims against Doe defendants. Those claims are **DISMISSED WITHOUT PREJUDICE**. The Motion is **DENIED IN PART** as to the state law claims against those defendants.

### III.   The FAC's First through Third Causes of Action State Claims against the Nurses

The FAC's first through third causes of action, all brought on behalf of the Estate only, seek to impose liability on the Nurses, under 42 U.S.C. § 1983. Movants generally ask the Court to dismiss this claim on the ground that it does not meet the deliberate indifference standard. Courts in the Ninth Circuit apply an "objective deliberate indifference" standard to Fourteenth

Amendment failure-to-protect claims. *Sandoval*, 985 F.3d 657, 672 (9th Cir. 2021). Where a pretrial detainee asserts such a claim in the medical treatment context, she must allege: "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined, including a decision with respect to medical treatment; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 669 (cleaned up).

Movants contend that: 1) the FAC doesn't allege clearly which condition "underpin[s]" the Estate's claim, so it doesn't allege that the failure to treat Serna's condition could result in further significant injury, (Dkt. 22-1 at 8, quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)); 2) the Nurses' failure to act doesn't amount even to negligence (*Id.* at 8–9); and 3) other Defendants' actions amounted to a superseding cause that cuts off the nurses' liability. Each of these arguments fails.

The first argument amounts to a contention that the allegations fail to meet *Sandoval*'s first and second prong, that Serna was placed in conditions that put her at substantial risk of suffering serious harm. The FAC alleges that Serna, while in custody, suffered from dehydration, alcohol and opiate withdrawal, and low blood oxygen saturation, and it alleges that these conditions put Serna at risk of death or organ damage if left untreated. (FAC ¶¶ 58, 85–86, 145, 173). And it alleges that the Nurses, through their failure to treat Serna, put her in those conditions.  (FAC ¶¶ 45–46, 72–74, 75–77). Nor does it matter that one of several root causes could have caused these dangerous conditions. It doesn't take a physician to know that a person who

can't keep clear fluids in her stomach for four days, is too weak to stand, and has insufficient bloody oxygen saturation requires medical attention.

Movants' next argument is similar, and it fails for the same reason. The Nurses, they contend, weren't even negligent, because low blood pressure and vomiting, generally, could be attributable to "routine early pregnancy." (Dkt. 22-1 at 9). But the FAC alleges that Serna's symptoms were anything but routine. She was vomiting for four days, unable to keep even clear liquids down, fainting, and delirious. Accepting these allegations as true, Serna's symptoms called for urgent treatment, regardless of their cause.

Finally, Movants argue that "[t]he intervening, superseding actions of Dr. Gilmore and—particularly—Dr. Von Lintig negate causation." (*Id.* at 10). "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement (Second) of Torts § 440. Because a defendant's negligence must be antecedent to the superseding cause, *Farr v. NC Machinery Co.*, 186 F.3d 1165, 1169 (9th Cir. 1999), this doctrine offers no assistance to Pascua, whom the FAC alleges to be the last person to see Serna before her death.

And it is no more helpful to Roque and Camama: unless circumstances indicate that the defendant's duty to prevent harm shifted to a third person, "the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm." Restatement (Second) of Torts § 452. The Nurses can't, by relying on superseding cause, disclaim their duties to Serna and shift blame to the one whose negligence was last in time. Nor can they claim that they were just "following Dr. Von Lintig's notes."  The FAC alleges that Dr. Von Lintig noted her observations and suspicions, (FAC ¶¶ 53, 62); it doesn't allege that she

gave any directions not to treat Serna, or that the Nurses read and relied on anything like that.

Because Movants haven't shown that the Court can't grant relief for the FAC's first, second, and third causes of action, the Motion is **DENIED** as to those claims.

## IV.   The FAC Fails to State a § 1983 Claim against Sheriff Gore and Lee

Sheriff Gore and Lee, the Medical Administrator for the Sheriff's Department, move to dismiss Plaintiffs' claims that they are subject to supervisory liability under § 1983. While a supervisor must participate in a constitutional violation to be liable that section, his participation can include the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011) (cleaned up). But it's not enough to allege a pattern of constitutional violations and inaction on the part of a supervisor. A plaintiff must allege that the supervisor *knows* of the pattern, so the inaction can constitute an "intentional decision." *See Sandoval*, 985 F.3d at 669 (Fourteenth Amendment failure to provide medical care requires "intentional decision" on part of tortfeasor); *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (supervisory liability requires "the same state of mind required for the [underlying] constitutional deprivation"); *Starr*, 652 F.3d at 1202 (citing *Dodds* with approval).

While the FAC sufficiently alleges a long pattern of harm to inmates in County custody, (FAC ¶¶ 82, 110(a)–(q)), and that Gore and Lee failed to act to correct that pattern, (*id.* ¶¶ 83–84, 129), it fails to allege facts indicating that they were aware of the pattern. Its conclusory allegation that "Gore [and]

Lee . . . were aware of Constitutional deficiencies in the delivery of seriously needed medical and psychiatric care due to the [National Commission on Correctional Healthcare ("NCCHC")] audit, the Grand Jury's report on [the County's information management software], and the high number of deaths and injuries by inmates" isn't enough—it lacks supporting factual allegations. (*Id.* ¶ 134). The only direct factual allegation that either Gore or Lee was aware of any problem with Las Colinas's healthcare practices is the allegation that Lee heard complaints that jail nurses didn't have time to read, understand, or document patient information. (*Id.* ¶ 116). But this problem on its own doesn't amount to a constitutional violation, nor does it so clearly lead to the alleged pattern of inmate harm that Lee's knowledge of that harm is a plausible inference. The remaining allegations regarding the NCCHC audit and issues with the County's information management systems suffer from both that flaw—neither source allegedly detailed facts amounting to constitutional violations—and the absence of any factual allegation that Gore or Lee was aware of either one. (*Id.* ¶¶ 116, 119–33).

Because the FAC fails to allege that Gore and Lee knew of the pattern of constitutional violations in the County's jails, it also fails to allege that their inaction represented an intentional decision. Without such a decision, the FAC fails to state claims for supervisory liability against Gore and Lee, and the Motion is **GRANTED** as to those claims.

## V.    The Nurses Aren't Entitled to Qualified Immunity on the Facts Alleged

Movants next argue that they have qualified immunity from Plaintiffs' five § 1983 claims. Because this Order dismisses the fourth and fifth causes of action against Gore and Lee, the Court considers only the Nurses' qualified immunity in connection with the first through third claims. It concludes that the Nurses do not have qualified immunity.

A government actor has qualified immunity if: (1) the plaintiff fails to allege the violation of a constitutional right; or (2) the right was not clearly established at the time of the misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). But the doctrine isn't available where "no reasonable [actor] could have concluded that [their actions or inactions were] constitutionally permissible." *Taylor v. Rioja*, 141 S.Ct. 52, 53 (2020).

It has been clearly established since at least 2013 that "failing to provide . . . life saving measures to an inmate in obvious need can provide the basis for liability under § 1983 for deliberate indifference." *Sandoval*, 985 F.3d at 679–80, *quoting Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013). And it has been clearly established since at least 2014 that this rule applies to jail nurses. *See id.* at 678–79 (denying qualified immunity to jail nurse defendants).

*Sandoval* is controlling here. In that case, the Ninth Circuit found that a jail nurse was properly denied qualified immunity where she "was told that [the inmate-patient] was sweating, tired, and disoriented, and that 'there was still something going on' that needed to be 'look[ed] at . . . more thoroughly,'" but did nothing more than perform a 10-second blood sugar test. *Id.* at 679. The FAC sufficiently alleges that, in each instance when Serna saw the Nurses on the day of her death, the Nurses knew of symptoms that were at least as serious: Camama knew that Serna was vomiting, delirious, had low blood pressure, was pregnant, and was going through withdrawal (FAC ¶¶ 42–46); Roque knew that Serna's blood pressure continued to fall from one abnormally low level to an even lower one even after Serna saw Dr. Von Lintig (*id.* ¶¶ 47–49, 72–74); and Pascua, within about an hour of Serna's death, knew that Serna had slid down a wall, where she sat, tensing her arms, behaving oddly, and breathing with difficulty. (*Id.* ¶¶ 75–81, 162).

Compared with the symptoms described in *Sandoval*, these known

symptoms were sufficiently serious that any reasonable nurse would have understood that their inaction "amounted to an unconstitutional failure to provide 'life-saving measures to an inmate in obvious need.'" *See id.* The Nurses aren't entitled to qualified immunity based on the facts alleged, so the Motion is **DENIED** as to the application of that doctrine to the claims against them.

## VI.   The FAC Sufficiently Alleges a Municipal Liability Claim against the County

The County next moves to dismiss the claim against it for municipal liability, arguing that the FAC fails to allege either an official County policy causally connected to Serna's death or a custom or practice of constitutional violations. The motion is denied as to that claim.

"Municipal liability is only appropriate where a plaintiff has shown that a constitutional deprivation was directly caused by a municipal policy." *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001), *abrogated on other grounds as recognized in Beck v. City of Upland*, 527 F.3d 853, 862 n.8 (9th Cir. 2008).  "Such a policy must result from a policy-making official and may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers not discharged or reprimanded." *Id.*

The FAC alleges both practices and evidence of repeated constitutional violations without consistent discipline. As discussed above, it alleges a longstanding pattern of harm to inmates through medical neglect. (FAC ¶¶ 110(a)–(q)). It alleges that San Diego County has the highest inmate death rate of any county in California, with inmates dying at a rate nearly 40% higher than that in the second-place county. (*Id.* ¶ 104). It alleges that policy-making officials were warned that that patients in substance withdrawal were placed in Medical Observation Beds that were "not within

sight or sound" of the nurses' station, with those patients able to contact nurses only with a call button. (*Id.* ¶ 128). It alleges a failure to impose "any consequence" on any medical staff in connection with three deaths involving inadequate medical care between 2015 and 2018. (*Id.* ¶¶ 111, 110(h), (k), (l).) And it alleges that the County failed to remove Dr. Von Lintig from her position after her failure to notice any "acute medical issues" in a "naked and delusional" patient subsequently diagnosed with a skull fracture, hypoxemic respiratory failure, encephalopathy, subdural hematoma, and seizure. (*Id.* ¶¶ 82–83). This is enough to plausibly allege a municipal policy of medical neglect towards inmates. And because the neglect Serna allegedly suffered fits this pattern, the FAC sufficiently alleges that the County's policy caused her death.

The Motion to Dismiss is **DENIED** as to the sixth cause of action against the County.

## VII.   The County and Nurses Aren't Immune from Tort Liability on the Facts Alleged

The FAC's seventh and eighth causes of action are claims for wrongful death and negligence claim against all Defendants. Movants contend that they are immune from state tort liability for injury proximately caused by the County's failure to provide medical care to a prisoner in County custody under Cal. Gov. Code § 845.6. That statute excepts situations in which the employee "knows or has reason to know that the prisoner is in immediate need of medical care and he fails to take reasonable action to summon such medical care." *Id.*

As discussed above, the FAC sufficiently alleges that the County, a public entity, employed Roque, Pascua, and Camama, who knew that Serna was in immediate need of medical care and failed to take reasonable action to get Serna that care. The County and the Nurses can't secure dismissal

based on Cal. Gov. Code § 845.6. For the same reason, the County's argument that Plaintiffs don't identify a statutory basis for holding the County liable in tort. *See Zeilman v. County of Kern*, 168 Cal. App. 3d 1174, 1186 (1985) ("Section 845.6 . . . *creates* liability" for governmental entities) (cleaned up). Nevertheless, punitive damages aren't available against the County under California law. Cal. Gov. Code § 818.

The FAC doesn't allege that Gore and Lee had the requisite knowledge to avoid the immunity provision of under Section 845.6, though, so the negligence and wrongful death claims against those Defendants must be dismissed.

The Motion is **DENIED IN PART** as to the seventh and eighth causes of action against the County, Roque, Pascua, and Camama, except insofar as the negligence claim seeks punitive damages against the County. It is **GRANTED IN PART** as to the claim for punitive damages against the County, with that claim **DISMISSED WITH PREJUDICE**. It is **GRANTED IN PART** as to the seventh and eighth causes of action against Gore and Lee; those claims are **DISMISSED WITHOUT PREJUDICE**.

## VIII.   The Estate—and Only the Estate—States a Bane Act Claim against

Plaintiffs' final cause of action seeks to impose liability on all Defendants under California's Bane Act, Cal. Civ. Code § 52.1. That Act permits claims against any person who, by threats, intimidation, or coercion, "interferes . . . or attempts to interfere . . . with the exercise or enjoyment by any individual of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(b)–(c). It provides standing only to Serna's Estate in this case. *See* Cal. Civ. Code § 52.1(c) (injured individual "may institute and prosecute [civil action] in their own name and on their own behalf"); *Bay Area*

*Rapid Transit Distr. v. Superior Ct.*, 38 Cal. App. 4th 141, 144 (1995).

As discussed above, the FAC doesn't sufficiently allege a Constitutional violation attributable to Gore or Lee, so the Court considers this claim only in connection with the County and the Nurses. The FAC doesn't state a claim against those Defendants.

"Threat, intimidation, or coercion" is a necessary element under the Bane Act. *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 791 (2017). The "threat, intimidation, or coercion" need not be "transactionally independent from the constitutional violation alleged"—that is, the act that amounts to a deprivation of a constitutional right may itself be coercive and thus satisfy that element. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Courts have equated the "[t]hreat, intimidation, or coercion" requirement to "intentional . . . conduct," *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013).[3] That intent requirement is satisfied where the defendant allegedly acted with "[r]eckless disregard of the right at issue." *Cornell*, 17 Cal. App. 5th at 804.

As discussed above, the FAC sufficiently alleges that the County and Nurses violated Serna's rights and that they acted with reckless disregard for those rights. The Motion is **DENIED IN PART** as to the Estate's Bane Act claims against the County and the Nurses. It is **GRANTED IN PART** as to the Estate's Bane Act claims against Gore and Lee, which are **DISMISSED WITHOUT PREJUDICE**, and as to all other Plaintiffs' Bane Act claims, which are **DISMISSED WITH PREJUDICE**.

**CONCLUSION**

---

[3] The California Court of Appeals, in *Cornell*, approved of this distinction in the context of deliberate indifference to a prisoner's medical needs, citing *M.H.* for the proposition that "in some circumstances, depending on the right alleged to have been interfered with, physical force is not required at all" to support a Bane Act claim. *Cornell*, 17 Cal. App. 5th at 802, n.31.

1  The FAC fails to sufficiently allege that Gore and Lee knew of the
2  danger to Serna and other inmates, so its fourth, fifth, seventh, eighth, and
3  ninth causes of action against those two defendants must be **DISMISSED**
4  **WITHOUT PREJUDICE**. It can't state a claim for punitive damages against
5  the County, or a Bane Act claim on behalf of any Plaintiff other than the
6  Estate; those claims are **DISMISSED WITH PREJUDICE**. And it doesn't
7  allege sufficient facts against the Doe defendants to state any federal claims
8  against them, so those claims are **DISMISSED WITHOUT PREJUDICE**.

9  But the FAC sufficiently alleges each of its remaining claims. The
10 Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs
11 may file an amended pleading within 28 days of this Order.

12  **IT IS SO ORDERED.**

13

14 DATED: March 18, 2022

Hon. Larry A. Burns
United States District Judge