UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ELISA SERNA by and through its administrator DOUGLAS GILLILAND, et al,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al,<br><br>Defendants. | Case No.: 20-cv-2096-LAB-DDL<br><br>**ORDER GRANTING IN PART MOTIONS TO DISMISS SECOND AMENDED COMPLAINT [Dkt. 50, 52]** |

Elisa Serna died on November 11, 2019, while in the custody of the County of San Diego at the Las Colinas Detention Facility. She had been in custody for five days. Plaintiffs allege she was denied medical care for withdrawal symptoms and dehydration. They brought this action claiming that the County of San Diego is liable for her death. The Plaintiffs are: Serna's estate (the "Estate"); her widower, Brandon Honeycutt; her minor child, S.H., through her guardian *ad litem*, Paloma Serna; and her parents, Michael and Paloma Serna. Their Second Amended Complaint ("SAC") asserts eight claims against eleven named defendants and twenty-eight unnamed "Doe" defendants.

Defendants County of San Diego, William Gore, Barbara Lee, Lorna Roque, Hazel Camama, and Lucas Lovisa (identified as "Lacee Lovisa" in the SAC)

(collectively, "County Defendants") have moved to dismiss portions of Plaintiffs' SAC. (Dkt. 50). Defendants Danalee Pascua and Reishone Foster independently join portions of County Defendants' motion. (Dkt. 51, 53). Foster also separately moves to dismiss all claims brought against her. (Dkt. 52). Defendants Coast Correctional Medical Group, Friederike Von Lintig, M.D., and Mark O'Brien, O.D. (collectively, "CCMG Defendants") join portions of both motions. (Dkt. 62).

Having considered the parties' submissions and the relevant law, the motions are **GRANTED IN PART** and **DENIED IN PART**. The Court **DISMISSES** the following claims:

1) The SAC's first through eighth claims as against all Doe Defendants, **WITHOUT PREDUDICE**;

2) The SAC's first, second, and sixth through eighth claims as against Lovisa and Foster, **WITH PREJUDICE**; and

3) The SAC's second claim, insofar as it is brought by Honeycutt, **WITH PREJUDICE**, and insofar as it is brought under the First or Fifth Amendment, **WITH PREJUDICE**.

I.   BACKGROUND

The relevant factual allegations and the reasonable inferences that can be drawn in Plaintiffs' favor are as follows. Las Colinas Detention Facility is a detention center owned and operated by the County of San Diego for female inmates in the County's custody.[1] (Dkt. 34, SAC ¶ 17). The County's custodial employees and staff work under the supervision of Sheriff William Gore, and its medical and nursing staff work under Medical Administrator Barbara Lee. (*Id.* ¶¶ 11–13, 16–17). Prior to the events giving rise to this action, multiple local

---

[1] The SAC doesn't allege this fact, alleging instead that the County owns and operates Las Colinas Jail. (SAC ¶ 17). For the purposes of this Order only, the Court takes judicial notice that the County houses female inmates at Las Colinas because it is generally known within this District. *See* Fed. R. Evid. 201(b)(1).

newspapers published stories detailing the number of inmate deaths in the County's jails, which Gore responded to in an op-ed published in September 2019. (*Id.* ¶¶ 114–21). In 2016, the County received a grand jury report noting that jail staff didn't know how to record inmates' medical conditions in the County's information management software, (*id.* ¶¶ 131–33), and the Sheriff's Department commissioned an audit of its compliance with the National Commission on Correctional Healthcare ("NCCHC") Standards for Health Services in Jails, (*id.* ¶ 136). The NCCHC report noted that Las Colinas failed to meet twenty-eight "essential standards" necessary for NCCHC accreditation. (*Id.* ¶ 140).

Elisa Serna was admitted to the County's custody on November 6, 2019. (*Id.* ¶ 22). When she was booked, she reported she was addicted to heroin and alcohol and that she had used heroin, alcohol, and Xanax two hours earlier. (*Id.* ¶¶ 23, 25). She was also pregnant, suffering from acute pneumonia, and exhibiting signs of withdrawal and dehydration, including nausea, vomiting, and dry skin. (*Id.* ¶¶ 24–25, 30–31, 45). She wasn't seen by a doctor or treated for withdrawal until her fourth day in Las Colinas. (*Id.* ¶¶ 38–39).

Between 1:15 a.m. and 7:00 p.m. on November 11, 2019, nurses Hazel Camama and Lorna Roque and Dr. Friederike Von Lintig observed Serna's condition decline without providing medical care.[2] (*Id.* ¶¶ 41–74). At some point during the interval, Deputy Reishone Foster dragged Serna to her cell by her wrists while Serna was nearly unconscious. (*Id.* ¶ 77). Foster didn't summon medical care. (*Id.*) At approximately 7:00 p.m., nurse Danalee Pascua and Deputy Lucas Lovisa went to Serna's cell and observed as she had a seizure, struck her

---

[2] The Court declines to recite the specific allegations against Camama, Roque, and Dr. Von Lintig because none of those defendants move to dismiss the claims against them for inadequate pleading. A detailed account of the allegations against those defendants can be found in the Court's Order partially dismissing the First Amended Complaint ("FAC"). (Dkt. 32 at 3–4).

head, and fell, unconscious, onto the floor of her cell. (*Id.* ¶ 78). They closed the door to Serna's cell without providing medical care. (*Id.* ¶ 80). Serna was found dead in her cell more than an hour later. (*Id.* ¶¶ 80–82).

Plaintiffs initiated this suit on October 26, 2020. (Dkt. 1). Serna's widower, Brandon Honeycutt, and her minor child, S.H., filed suit on behalf of the Estate as Serna's successors-in-interest. On November 11, 2021, a probate court issued Letters of Administration appointing Douglas Gilliland as administrator and personal representative of the Estate. (Dkt. 28-3). Plaintiffs filed the SAC on April 1, 2022, (*see* SAC), and moved to substitute Gilliland as administrator of the Estate on July 7, 2022, (Dkt. 57). The Court granted that unopposed motion. (Dkt. 68). Due to pending criminal charges against Pascua and Dr. Von Lintig, the Court stayed civil discovery from those defendants. (Dkt. 46, 78).

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is plausible if the factual allegations supporting it permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations need not be detailed; instead, the plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. The plausibility standard is not a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Courts aren't required to accept legal conclusions couched as factual allegations and "formulaic recitation[s] of the elements of a cause of action" aren't sufficient. *Twombly*, 550 U.S. at 555. Ultimately, a court must determine whether the

plaintiff's alleged facts, if proven, permit the court to grant the requested relief. *See Iqbal*, 556 U.S. at 666; Fed. R. Civ. P. 8(a)(2).

## III.   DISCUSSION

### A.   Standing

County Defendants and Foster move to dismiss all claims brought by the Estate because Honeycutt and S.H. lack standing to sue on the Estate's behalf. (Dkt. 50-1 at 3–4, 52-1 at 3–5). Pascua and CCMG Defendants join this argument. (Dkt. 51, 54). As Serna's successors-in-interest, Honeycutt and S.H. originally had standing to sue on the Estate's behalf under Cal. Civ. Pro. Code § 377.30. A state probate court has since appointed Douglas Gilliland as the administrator and personal representative of the Estate. (Dkt. 28 at 2). Under California law, as the Estate's personal representative, Gilliland alone has standing to prosecute claims on the Estate's behalf. Cal. Civ. Pro. Code. § 377.30.

On October 10, 2022, the Court granted Plaintiffs' unopposed motion and substituted Gilliland as representative of the Estate in place of Honeycutt and S.H. (Dkt. 68). County Defendants concede that Gilliland's substitution cures the standing deficiency. (Dkt. 62 at 2). The Court finds that Gilliland, as the Estate's personal representative, has standing to bring claims on the Estate's behalf. *See* § 377.30. County Defendants and Foster's motions to dismiss the Estate's claims for lack of standing are therefore **DENIED AS MOOT**.

### B.   Sufficiency of Pleading Against Doe Defendants

County Defendants next contend that both the state law and federal claims against Doe Defendants 3–30 must be dismissed for failure to allege facts specific to any of those defendants in the SAC. (Dkt. 50-1 at 5–7). The Court addressed a similar argument when ruling on County Defendants' motion to dismiss the FAC:

> Next, Movants argue that [all] claims against the 100 Doe Defendants must be dismissed for lack of allegations specific to any of those Defendants. "A plaintiff may refer to unknown defendants as [a Doe]." *Keavney v. Cty. of San*

> *Diego*, Case No. 3:19-cv-019472020 WL 4192286, at *4–5 (S.D. Cal. July 21, 2020). Federal courts have dismissed claims against such defendants, though, when the pleading doesn't "even minimally explain how any of the unidentified parties he seeks to sue personally caused a violation of his constitutional rights." *See, e.g.*, *Cavanaugh v. County of San Diego*, Case No. 3:18-cv-02557-BEN-LL, 2020 WL 9703592 at *25, n.20 (S.D. Cal. Nov. 12, 2020).
>
> But where state claims are involved, California's fictitious name statute permitting the pleading of Doe defendants tolls the statute of limitations on those claims, and so it is substantive law that the Court is bound to apply. *Lindley v. General Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986). Under that statute, a plaintiff may name Doe defendants when he doesn't know the true name of a defendant or the facts giving him a cause of action against a defendant. *Munoz v. Purdy*, 91 Cal. App. 3d 942, 947 (1979).

(Dkt. 32 at 6–7). In its earlier Order, the Court found the "cursory and conclusory allegations" against the 100 Doe Defendants insufficient for the federal claims, but sufficient for the state claims, and dismissed those defendants from the federal claims only. (*Id.* at 7). County Defendants renew their earlier argument and ask the Court to reconsider its application of California's pleading standard to the state law claims.

The Court has carefully reviewed the law and the parties' arguments and has reconsidered its prior decision regarding the correct pleading standard. On reconsideration, the Court now concludes that the federal pleading standard, as set forth in the Federal Rules of Civil Procedure, applies as to both the federal *and* state claims. *Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021) ("Pleading in federal court is governed by Federal Rules of Civil Procedure, not state pleading requirements."). Under this standard, Plaintiffs may refer to unknown defendants as "Does," "but [they] must allege specific facts showing how each particular doe defendant violated [their] rights." *Keavney v. Cnty. of San Diego*, No. 3:19-cv-

01947-AJB-BGS, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020) (internal citation omitted); see also *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (holding a plaintiff must "set forth specific facts" as to each individual defendant's wrongdoing).

Applying the federal pleading standard to the SAC, it's evident the claims against Doe Defendants 3–30 aren't sufficiently pled. Like the FAC, the SAC makes only cursory and conclusory allegations against the Doe Defendants. (*See* SAC ¶¶ 192, 203–04, 221, 228, 233, 242, 247–49, 256, 293, 297 (federal claims); *id.* ¶¶ 305–07, 316–22, 326, 334 (state claims)). The SAC admits that "Plaintiffs are truly ignorant . . . of the facts giving rise to [Doe Defendants'] liability." (*Id.* ¶ 18). Threadbare allegations like these are insufficient to support either the federal or state law claims. County Defendants' motion is **GRANTED IN PART** as to the claims against Doe Defendants 3–30, and those claims are **DISMISSED WITHOUT PREJUDICE**. The motion is **DENIED IN PART** to the extent it requests that the claims be dismissed in their entirety as to the rest of the named Defendants.

C.   Substitution of Lovisa and Foster

County Defendants move to dismiss all claims brought against Lovisa because he can't properly be substituted or added as a new defendant at this stage in the case. (Dkt. 50-1 at 9–12). Foster joins this argument. (Dkt. 53). Generally, California's fictitious name statute permits a plaintiff to use a fictitious name to identify an unknown defendant and to amend the complaint once the defendant's identity is ascertained. *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200–01 (9th Cir. 2014); *see also* Cal. Civ. Pro. Code § 474. Any such amendment relates back to the date of the original pleading. *See Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 22 Cal. Rptr. 3d 453, 457 (Ct. App. 2004). However, any substitution of a "Doe" that adds a new defendant "cannot be related back to the original complaint or the first amended complaint [when] the description of the Doe

defendants in those complaints was insufficient to identify anyone." *Lopez v. Gen. Motors Corp.*, 697 F.2d 1328, 1332 (9th Cir. 1983); *see also Ambe v. Air Fr., S.A.*, No. 2:17-CV-08719 DDP-Ex, 2018 WL 6435875, at *5 (C.D. Cal. Dec. 7, 2018) (applying *Lopez* and denying amendment to add the true identity of a Doe when the complaint lacked sufficient detail to identify any Doe).

When a new defendant can't be substituted in for a Doe, an amendment adding the defendant is permissible only if it relates back to the original pleading under either the state's applicable statute of limitations or Federal Rule of Civil Procedure 15(c)(1)(C). *Butler*, 766 F.3d at 1159–200; Fed. R. Civ. P. 15(c)(1)(A), (C). Courts apply the more permissive of the two relation back standards. *See Butler*, 766 F.3d at 1200. For § 1983 actions, the applicable statute of limitations is the "forum state's statute of limitations for personal injury actions," which in California is two years. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Under Rule 15(c)(1)(C), an amendment changing the naming of a party is only permissible if, within 120 days of the complaint, the party to be added received notice of the action and "knew or should have known that the action would have been brought against it, but for a mistake concerning the party's identity." Fed. R. Civ. P. 15(c)(1)(C); *id.* 4(m); *see also Butler*, 766 F.3d at 1202.

Here, the FAC made only "cursory and conclusory allegations" about the Doe Defendants' conduct. (Dkt. 32 at 7). Because those allegations were "insufficient to identify anyone," *Lopez*, 697 F.2d at 1332, Lovisa and Foster may only be added as new defendants—they may not be substituted in for any Doe Defendant in either the federal or state claims. The claims against Lovisa and Foster accrued on November 11, 2019, meaning the two-year statute of limitations had run when the SAC was filed on April 1, 2022. (SAC ¶ 75). The allegations in the FAC were also insufficient to give Lovisa or Foster notice of the action within 120 days of the FAC's filing.

The Court finds that the claims against Lovisa and Foster don't relate back

to the Complaint or the FAC and that Lovisa and Foster were improperly added to the SAC. County Defendants' motion is **GRANTED** as to the claims against Lovisa, and Foster's joinder is **GRANTED** as to the claims against her. The claims against Lovisa and Foster are **DISMISSED WITH PREJUDICE**. Because it is clear that any further amendment here would be futile, these claims are **DISMISSED WITHOUT LEAVE TO AMEND**. *See DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).

### D.   Familial Association Claims

As the second claim, Honeycutt, S.H., Michael Serna, and Paloma Serna bring claims for deprivation of their right to familial association under the First, Fifth, and Fourteenth Amendments. Lovisa argues these claims should be partially dismissed to the extent they're brought (1) under the First or Fifth Amendment or (2) by Honeycutt, Elisa Serna's spouse. Pascua and CCMG Defendants join this argument. (Dkt. 51; 54). Foster asserts qualified immunity against these claims to the extent they're brought under the First or Fifth Amendment or by Honeycutt, arguing the asserted rights weren't clearly established at the time of Serna's death. (Dkt. 52-1 at 5–22).

The Fourteenth Amendment protects the right to familial association, "guarantee[ing] that parents will not be separated from their children without due process of law except in emergencies*." Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1107 (9th Cir. 2001) (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). Against municipalities, the right to familial association is protected by the Fourteenth Amendment's due process clause—not the Fifth Amendment's due process clause. *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) ("[T]he Fifth Amendment's due process clause only applies to the federal government."). And the First Amendment protects the right to expressive association, not familial association. *See Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 458 (9th Cir. 2018) (citing *Roberts v.*

*U.S. Jaycees*, 468 U.S 609, 617–18 (1984)). Courts disagree over whether the Fourteenth Amendment's protections extend to spousal relationships. *Compare Lee v. Cnty. of L.A.*, No. CV 16-2039 DSF (JPRx), 2018 WL 6016992, at *3 (C.D. Cal. Mar. 6, 2018) (recognizing disagreement and declining to extend right to familial association to spouses), *with Morales v. City of Delano*, 852 F. Supp. 2d 1253, 1273–74 (E.D. Cal. 2012) (holding that Fourteenth Amendment protects the right of spouses to "the support and companionship of each other"). *See also Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (noting courts should exercise restraint in expanding substantive due process rights).

Honeycutt has voluntarily moved to dismiss his Fourteenth Amendment claim for deprivation of his right to familial association. (Dkt. 60 at 15). Lovisa and Foster's motions are therefore **GRANTED** as to Honeycutt's claim and his claim is **DISMISSED WITH PREJUDICE**.

Plaintiffs didn't respond to County Defendants' argument regarding the First and Fifth Amendment claims. County Defendants argue that Plaintiffs' "failure to oppose" the argument against these claims is tantamount to a concession of their dismissal. (Dkt. 62 at 2). When a plaintiff fails to respond to an argument raised in a motion to dismiss, a court may dismiss the challenged claim as abandoned. *Walsh v. Nev. Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding a plaintiff "effectively abandoned" a claim when her opposition failed to address arguments raised in a motion to dismiss).

Regardless of Plaintiffs' apparent abandonment of their First and Fifth Amendment claims, those claims fail as a matter of law. The First Amendment doesn't protect familial relationships. *See Erotic Serv.*, 880 F.3d at 458 (holding the First Amendment protects the right to expressive association, but not the right to intimate or familial association). And "the Fifth Amendment's due process clause only applies [against] the federal government," not municipal governments. *See Bingue*, 512 F.3d at 1174. Lovisa and Foster's motions are **GRANTED** as to

10

20-cv-2096-LAB-DDL

the right to familial association claims. Those claims are **DISMISSED WITH PREJUDICE** to the extent they rely on the First or Fifth Amendment.

### E.  Supervisory Liability

County Defendants move to dismiss the § 1983 supervisory liability claims brought against Gore and Lee. (Dkt. 50-1 at 14–17). They argue the SAC fails to allege sufficient facts to support these claims. (*Id.*). The Court previously dismissed the FAC's supervisory liability claims against Gore and Lee without prejudice for failing to state a claim under § 1983, (Dkt. 32 at 10–11), but Plaintiffs have now realleged the same claims in the SAC, (SAC ¶¶ 220–263).

A supervisor may be liable under § 1983 if either he was personally involved in the constitutional deprivation or there is a sufficient causal connection between his unlawful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003–04 (9th Cir. 2012). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.' *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011)).

A claim alleging a supervisor "knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'" *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208). But it's not enough to allege a pattern of constitutional violations and inaction on the part of a supervisor. Instead, a plaintiff must allege that the supervisor *knows* of the pattern, so the inaction can constitute an "intentional decision." *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021). Conclusory allegations about a supervisor's knowledge are sufficient to state a

claim of supervisory liability when supported by specific factual allegations. *Compare Starr*, 652 F.3d at 1209–12 (allegations the sheriff was aware of unconstitutional conditions in the jail were sufficient to state a claim of supervisory liability for deliberate indifference to an inmate's medical needs when the allegations were supported by specific, detailed allegations about when the sheriff received specific information about conditions in the jail), *with Keates*, 883 F.3d at 1243 (conclusory allegations regarding a supervisor's conduct were insufficient to state a claim of supervisory liability), *and Lowe v. Cnty. of Butte*, No. 2:20-cv-1997-JAM-DMC, 2021 WL 1890386, at *6 (E.D. Cal. May 11, 2021) (conclusory allegations the sheriff had knowledge of unconstitutional jail conditions were insufficient to state a claim when not supported by specific facts regarding the sheriff's knowledge). Because Plaintiffs didn't respond to County Defendants' argument regarding the sufficiency of the supervisory liability claims against Gore and Lee, County Defendants once again argue that the claims should be dismissed. (Dkt. 62 at 2).

Notwithstanding Plaintiffs' apparent abandonment of those claims, the SAC adequately pleads claims for supervisory liability against Gore and Lee. Like the FAC, the SAC sufficiently alleges a long pattern of harm to inmates in the County's custody, (SAC ¶¶ 92, 127(a)–(r), 141, 148–50), and that Gore and Lee failed to act to correct that pattern, (*id.* ¶¶ 93, 95, 148, 153–54). While the SAC contains many of the same allegations as the FAC, (*see* Dkt. 32 at 10–11), the Court finds the SAC alleges sufficient facts to suggest that Gore and Lee were aware of the pattern of harm. For example, the SAC alleges Gore and Lee were "aware of Constitutional deficiencies in the delivery of seriously needed medical and psychiatric care due to the [National Commission on Correctional Healthcare ("NCCHC")] audit, the Grand Jury's report on [the County's information management software], and the high number of deaths and injuries by inmates." (*Id.* ¶ 154). The SAC doesn't directly allege that Gore and Lee reviewed the

NCCHC audit, but it does allege that Gore and Lee were responsible for policies and procedures in the County's jails, (*id.* ¶¶ 11–13), that Sheriff's Department "contracted [the NCCHC] for assistance regarding compliance with the NCCHC Standards for Health Services in Jails," and the NCCHC delivered its report in January 2017, (*id* ¶¶ 136–37). The NCCHC report noted that Las Colinas failed to meet twenty-eight "essential standards" necessary for NCCHC accreditation. (*id.* ¶ 140). Several of these failures directly suggest constitutionally deficient practices, such as the lack of screening and initial health assessments, (*id.* ¶ 141), or the continued use of outdated protocols for medically supervised withdrawal, (*id.* ¶¶ 147–52). The SAC also alleges that Gore responded to complaints over jail deaths by penning an op-ed. (*Id.* ¶¶ 118–19, 124). Taken together, these allegations support the inference that that Gore and Lee knew of constitutionally deficient practices in Las Colinas. *See, e.g.*, *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1194–96 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (holding prison officials violate the Constitution when failing to medically screen new inmates); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc) (holding prison officials violate the Constitution when choosing a treatment that is "medically unacceptable under the circumstances").

The SAC sufficiently alleges that Gore and Lee knew of the pattern of constitutional violations in the County's jails and, therefore, sufficiently alleges that their inaction represented an intentional decision. *See Sandoval*, 985 F.3d at 669. This is sufficient for supervisory liability to attach against Gore and Lee. County Defendants' motion is **DENIED** as to those claims.

## IV.   CONCLUSION

County Defendant and Foster's motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**. The SAC fails to sufficiently allege facts to identify Doe

Defendants 3–30, so all claims against those defendants are **DISMISSED WITHOUT PREJUDICE**. Lovisa and Foster can't properly be substituted and the amendment adding them doesn't relate back, so all claims against those Defendants are **DISMISSED WITH PREJUDICE**. Familial association claims can only be brought against municipalities under the Fourteenth Amendment and can't be brought by spouses, so the second claim is **DISMISSED WITH PREJUDICE** to the extent it is brought under the First or Fifth Amendment or by Honeycutt.

**IT IS SO ORDERED**.

Dated: February 15, 2023

**Hon. Larry Alan Burns**
United States District Judge