UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ELISA SERNA by and through its administrator DOUGLAS GILLILAND; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; et al.,<br><br>Defendants. | Case No.:  20-cv-2096-LAB-DDL<br><br>**ORDER:**<br><br>**(1)   DENYING DEFENDANTS' MOTION TO BIFURCATE PLAINTIFFS'** *MONELL* **CLAIMS AND STAY** *MONELL***-RELATED DISCOVERY, [Dkt. 99];**<br><br>**(2)   DENYING PLAINTIFFS' MOTION TO SEAL OPPOSITION TO MOTION TO BIFURCATE, [Dkt. 122]; and**<br><br>**(3)   OVERRULING COUNTY OF SAN DIEGO'S OBJECTIONS TO DISCOVERY ORDER, [Dkt. 231]** |

Defendants County of San Diego ("County"), William Gore, Barbara Lee, Lorna Roque, and Hazel Camama (collectively, the "County Defendants") filed a motion to bifurcate Plaintiffs' claims pursuant to *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658 (1978), and to stay *Monell*-related discovery. (Dkt. 99).

1

20-cv-2096-LAB-DDL

Plaintiffs opposed the motion to bifurcate and filed a motion to seal their opposition based on the parties' protective order. (Dkt. 122, 124). The County also filed Federal Rule of Civil Procedure 72(a) Objections ("Objections") to Magistrate Judge David D. Leshner's August 30, 2023 Discovery Order ("Discovery Order"), which granted in part and denied in part Plaintiffs' motion to compel production of documents related to the Critical Incident Review Board ("CIRB") Reports and CIRB Spreadsheet. (Dkt. 231). The Court having read all papers filed in support and in opposition to the motions and Objections rules as follows.

I.   **BACKGROUND**

This action stems from the death of Elisa Serna while in the custody of the County at the Las Colinas Detention Facility. Plaintiffs allege the County Defendants, Coast Correctional Medical Group ("CCMG") including Mark O'Brien and Friederike C. Von Lintig (collectively, the "CCMG Defendants"), and Danalee Pascua (together with County Defendants and CCMG Defendants, "Defendants") are responsible for Serna's death. (Dkt. 34). Plaintiffs allege Defendants Gore, Lee, and Dr. O'Brien failed to properly train, supervise, and discipline their staff, (*id.* ¶¶ 220–263), and the County and CCMG have longstanding and systemic deficiencies in the treatment of inmates, (*id.* ¶¶ 264–301).

Plaintiffs requested documents, including the CIRB Reports and CIRB Spreadsheet, to prove the County and CCMG knew about these issues involving the treatment of inmates but failed to act. (Dkt. 99-1 at 3–5). The production of the CIRB Reports and CIRB Spreadsheet was highly contested by the County Defendants and CCMG Defendants based on their arguments that the documents are privileged and protected from disclosure by the attorney-client privilege and attorney work-product doctrine. (*See* Dkt. 141, 143, 152, 153, 184, 185, 231-1). After multiple rounds of briefing and oral argument, Judge Leshner issued his order granting in part and denying in part Plaintiffs' motion to compel the production of the CIRB Reports and CIRB Spreadsheet on August 30, 2023. (Dkt. 220). Judge

Leshner determined the CIRB documents weren't privileged, thirty-three of thirty-five of the requested CIRB Reports were relevant and proportional to the needs of the case, and any privacy concerns could be properly limited with redactions. (*Id.* at 2, 6–24).

The County subsequently filed an *ex parte* application requesting a stay on Judge Leshner's Discovery Order. (Dkt. 223). Prior to the Court ruling on the *ex parte* application, the County filed its Objections to the Discovery Order. (Dkt. 231). On September 14, 2023, Judge Leshner issued an order regarding redactions to the CIRB documents, rejecting the County's proposed redactions and ordering the production of unredacted versions of the CIRB documents. (Dkt. 232). Shortly thereafter, the Court denied the *ex parte* application, but allow the County one more opportunity to identify specific statements that might be protected by the attorney-client privilege through *in camera* review. (Dkt. 236). The County timely submitted its proposed redactions, and Judge Leshner issued a supplemental order about the proper redactions and the production of the CIRB documents. (Dkt. 246). The County filed another *ex parte* application requesting a stay of the supplemental order, (Dkt. 249), but this application was denied and the production of the CIRB documents was required by October 4, 2023, (Dkt. 253).

## II.    MOTION TO BIFURCATE *MONELL* CLAIMS AND STAY DISCOVERY

County Defendants seek to bifurcate the *Monell* claims and stay all *Monell*-related discovery because (1) it would be prejudicial for the jury to hear about thirteen other individuals who have died in jails over the past twelve years and may cause jury confusion; (2) will promote convenience and judicial economy; and (3) the *Monell* claims involve separate issues. (Dkt. 99, 118). CCMG Defendants join in the motion. (Dkt. 100). Plaintiffs oppose the motion. (Dkt. 124).

Federal Rule of Civil Procedure 42 provides a court may order a separate trial "[f]or convenience, . . . or to expedite and economize." Fed R. Civ. P. 42(b); *see also In re Hyatt Corp.*, 262 F.R.D. 538, 543 (D. Haw. 2009). When determining

whether to order a separate trial, courts consider several factors, including whether separate trials will result in judicial economy and whether separate trials will unduly prejudice either party. *See Myspace, Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915, 917 (N.D. Cal. 2010).

Under *Monell*, municipalities and local governments may be held liable under 42 U.S.C. § 1983 if a policy, practice, or custom of the government is the moving force behind a violation of constitutional rights. *Monell*, 436 U.S. at 694. To establish *Monell* liability, a plaintiff must prove: (1) he was deprived of a constitutional right; (2) the government had a policy or custom; (3) the policy or custom amounts to deliberate indifference to the plaintiff's constitutional right; and (4) "the policy is the moving force behind the constitutional violation." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

A plaintiff can satisfy *Monell*'s policy requirement in one of three ways. First, the government acted pursuant to an official policy. *Id.* Second, the government had a "longstanding practice or custom." *Id.* (quoting *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014)). Third, "'the individual who committed the constitutional tort was an official with final policy making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 974 (quoting *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), overruled on other grounds by *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

A local government "may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional

4

20-cv-2096-LAB-DDL

method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) ("While one or two incidents are insufficient to establish a custom or policy, . . . we have not established what number of similar incidents would be sufficient to constitute a custom or policy.").

A local government's failure to train its employees may also create § 1983 liability when the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *City of Canton*, 489 U.S. at 390)). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). However, a plaintiff can "prov[e] a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long*, 442 F.3d at 1186 (quoting *Brown*, 520 U.S. at 409); *see also Brown*, 520 U.S. at 409 ("The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify

a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.").

Here, there's an overlap between Plaintiffs' claims against Defendants Gore, Lee, and Dr. O'Brien for their failures to train, supervise, and discipline, and the *Monell* claims against the County and CCMG. In these overlapping claims, Plaintiffs will need to show that the supervisory Defendants knew of the need to train or supervise and they failed to train or supervise. These previous occurrences would help establish there was a custom of not training or supervising in place to support *Monell* liability. See *Greer v. Cnty. of San Diego*, No. 19-cv-378-JO-DEB, ECF Nos. 173, 176. Moreover, the County claims that it would be more convenient, efficient, and economical to have a separate trial on the *Monell* claims, but it argued against having two separate trials for the County Defendants and remaining Defendants because the parties would have to expend money and introduce overlapping evidence. (Dkt. 264). The same argument would apply if the Court decided to separate the *Monell* claims because Plaintiffs would necessarily introduce the evidence of past failures to train or supervise employees at both trials. (Dkt. 124 at 6). The County Defendants have merely taken the stance that two separate trials would be convenient and promote judicial economy when it is better for their case, and then taken the opposite stance when it hurts their case. The request to bifurcate the *Monell* claims and stay *Monell*-related discovery is **DENIED**.[1] (Dkt. 99). If the Defendants believe it will be helpful, the Court may be willing to instruct the jury on limiting instructions to avoid any prejudice.

//

---

[1] At this time, the parties have conducted all discovery related to the *Monell* claims. The request to stay *Monell*-related discovery is **MOOT** and can be dismissed on this ground as well.

### III. MOTION TO SEAL

Plaintiffs filed a motion to seal their opposition to the motion to bifurcate the *Monell* claims and stay *Monell*-related discovery. (Dkt. 122). Plaintiffs filed the motion to seal because they were informed their opposition contained material taken from Serna's homicide investigation that is subject to this case's confidential protective order. (*Id.* at 1).

The public has less of a need for access to court records attached only to non-dispositive motions because those documents are often "'unrelated, or only tangentially related, to the underlying cause of action.'" *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003) (quoting *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)). A particularized showing under the "good cause" standard of Federal Rule of Civil Procedure 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions. *Id.* at 1135.

Plaintiffs don't believe it's necessary to seal portions of their opposition. (Dkt. 122 at 1). County Defendants indicate Judge Leshner issued a protective order that protects Serna's homicide file, which should help preserve the fairness of the ongoing criminal proceedings. (Dkt. 118 at 10). The Court agrees the arguments to protect the fairness of the criminal trial and avoid tainting the jury pool meets or exceeds the good cause standard. *See Crowe v. Cnty. of San Diego*, 210 F. Supp. 2d 1189, 1200 (S.D. Cal. 2002); *see also Phillips*, 307 F.3d at 1213 ("When a court grants a protective order for information produced during discovery, it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality."). However, the proposed redactions are already publicly available as this information was produced during the criminal trial and there's no longer any worry about tainting the jury pool. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006) (unsealing records that were either

already publicly available or were available in other documents being produced). The motion to seal is **DENIED**. (Dkt. 122). Plaintiffs have five days from the date of this Order to file an unredacted version of the opposition.

## IV. MOTION FOR RECONSIDERATION OF DISCOVERY ORDER

The County objects to the portion of Judge Leshner's Discovery Order granting in part Plaintiffs' motion to compel the production of the thirty-three CIRB Reports and the portion of the CIRB Spreadsheet that identifies the "action items" because: (1) the CIRB Reports and CIRB Spreadsheet are privileged; (2) if the CIRB Reports are dual-purpose communications the "a primary purpose" standard as articulated in *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014), applies; (3) it's unfair to apply "the primary purpose" standard adopted in *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021), retroactively; and (4) other than Serna's CIRB Report, the other thirty-two CIRB Reports aren't relevant or proportional to this case. (Dkt. 231, 258). Plaintiffs opposed the County's Objections and request to reconsider. (Dkt. 251).

### A. Legal Standard

A party may object to a magistrate judge's non-dispositive pretrial order within fourteen days after service of the order. *See* Fed. R. Civ. P. 72(a). Under Federal Rule of Civil Procedure 72(a), a magistrate judge's discovery order may be modified or set aside if it is "clearly erroneous or contrary to law." *Id.* "The 'clearly erroneous' standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters." *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, No. 15-cv-595-BAS-MDD, 2017 WL 3335736, at *2 (S.D. Cal. Aug. 4, 2017) (quoting *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000)); *Computer Econ., Inc. v. Gartner Grp.*, Inc., 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999). The clear error standard allows the court to overturn a magistrate judge's factual determinations only if the court reaches a "definite and firm conviction that a mistake has been committed." *Wolpin v. Philip*

*Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999) (quoting *Fed. Sav. & Loan Ins. Corp. v. Commonwealth Land Title Ins. Co.*, 130 F.R.D. 507, 508 (D.D.C. 1990)). An order is contrary to law, on the other hand, "if the judge applies an incorrect legal standard or fails to consider an element of the applicable standard." *PetConnect Rescue, Inc. v. Salinas*, No. 20-cv-527-LL-DEB, 2022 WL 703836, at *3 (S.D. Cal. Mar. 9, 2022) (citing *Hunt v. Nat'l Broad. Co.*, 872 F.3d 289, 292 (9th Cir. 1989)). "When reviewing discovery disputes, however, 'the Magistrate is afforded broad discretion, which will be overruled only if abused.'" *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (citations omitted); *see also Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (stating that on a Rule 72 objection, the district court "may not simply substitute its judgment for that of the deciding court").

### B.   Analysis

#### 1.   Factual Findings

First, the parties dispute whether Judge Leshner's factual findings in his Discovery Order are clearly erroneous. The County lists eight different instances where Judge Leshner relied on sworn testimony by Michael Baranic, the current Sheriff's Department Chief Legal Advisor, who hasn't testified nor been deposed in this action. (Dkt. 231-1 at 4–6). Plaintiffs argue Judge Leshner properly relied on sworn testimony Mr. Baranic gave in the case *Morton v. Cnty of San Diego*, No. 21-cv-1428-MMA-DDL, 2023 WL 4243239 (S.D. Cal. June 27, 2023). (Dkt. 251 at 6–8). The County cites *Upjohn Co. v. United States*, 449 U.S. 383, 396–97 (1981), for the premise that privilege is to be determined on a case-by-case basis. (Dkt. 231 at 4–6; 258 at 2–3). However, at no point does the County argue Mr. Baranic's sworn testimony is incorrect or inconsistent with current CIRB's processes and functions or his own declaration he submitted in this case. The County fails to provide any convincing argument why Judge Leshner wasn't allowed to rely on this testimony. *But see United States v. RAJMP, Inc.*, No. 17-

cv-515-AJB-DEB, 2020 WL 5752938, at *3–4 (S.D. Cal. Aug. 25, 2020) (allowing use of prior deposition testimony from prior action for use in that action).

In addition, as Plaintiffs assert, the County never argued in its underlying motion why Judge Leshner shouldn't or couldn't rely on Mr. Baranic's testimony in *Morton*. (Dkt. 251 at 8). The Court needn't address the County's argument raised for the first time in its Objections. *See In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, No. 11-md-2286-MMA-MDD, 2020 WL 6504416, at *5 (S.D. Cal. Nov. 5, 2020) (quoting *Hendon v. Baroya*, No. 05-cv-01247-AWI-GSA-PC, 2012 WL 995757, at *1 (E.D. Cal. Mar. 23, 2012)) ("Motions to reconsider a magistrate judge's ruling 'are not the place for parties to make new arguments not raised in their original briefs.'"); *see also Hall v. Marriott Int'l, Inc.*, No. 19-cv-01715-JLS-AHG, 2021 WL 5077595, at *5 (S.D. Cal. Nov. 1, 2021) (collecting cases).

The Court isn't convinced a mistake has been committed, *Wolpin*, 189 F.R.D. at 422), so it **OVERRULES** the County's objections to Judge Leshner's factual findings.

### 2. Legal Conclusions

Next, the parties dispute whether Judge Leshner's legal conclusions in his Discovery Order are contrary to law. The County objects to eight different legal conclusions in Judge Leshner's Discovery Order: (1) the CIRB Reports aren't privileged in their entirety and aren't protected work-product; (2) the *In re Grand Jury*'s "the primary purpose" standard applies instead of *Kellogg*'s "a primary purpose" standard; (3) retroactive application of *In re Grand Jury* "the primary purpose" standard when other judges in this District had already determined the CIRB Reports to be privileged in 2015 and 2017; (4) thirty-three of thirty-five CIRB Reports are relevant and proportional to the needs of this case; (5) the County must show every communication was made for the purpose of giving or seeking legal advice; (6) the "action item" portion of the CIRB Spreadsheet wasn't privileged; (7) there's no work-product protection when the Chief Legal Advisor is

involved; and (8) the production of thirty-two CIRB Reports is proportional to the needs of this case. (Dkt. 231-1 at 7–8).

### i. Attorney-Client Privilege

The attorney-client privilege protects "communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential." *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). The purpose of the privilege is to encourage clients to make full disclosures to their attorneys. *Upjohn*, 449 U.S. at 389.

As detailed in Judge Leshner's Discovery Order, the San Diego Sheriff's Department Policy and Procedure Manual Section 4.23 ("Section 4.23") describes the CIRB's purpose and procedures:

> The purpose of [the CIRB] is to consult with department legal counsel when an incident occurs which may give rise to litigation. The focus of the CIRB will be to assess the department's civil exposure as a result of a given incident. The CIRB will carefully review those incidents from multiple perspectives, including training, tactics, policies, and procedures with the ultimate goal of identifying problem areas and recommending actions so that potential liability can be avoided in the future.

(Dkt. 220 at 3 (citing Dkt. 153-2 at 11)). The Discovery Order also provided details about the CIRB's five members, review process including the presentation session and closed session, and post-CIRB meeting requirements. (*Id.* at 4–5). Most importantly, the CIRB consists of three voting members that includes the Sheriff's Department Commanders from the Law Enforcement, Court Services, and Detention Services Divisions and two non-voting members that are the Sheriff's Department Chief Legal Advisor and a Commander from Human Resources. (*Id.* at 4 (citing Dkt. 153-2 at 11). These members meet in a closed session, the three voting members will vote to make a determination as to whether or not a policy violation may exist, and the CIRB may make training and policy recommendations. (*Id.* at 5).

Before addressing the merits, Judge Leshner's Discovery Order identified recent cases in this District, including *Greer*, 634 F. Supp. 3d 911 (S.D. Cal. 2022) and *Morton*, 2023 WL 4243239 (S.D. Cal. June 27, 2023), that considered attorney-client privilege assertions as to the CIRB Reports. (*Id.* at 8–9). In both of these cases, the County failed to prove that the CIRB Reports were privileged in their entirety. (*Id.*). With this backdrop in mind, Judge Leshner turned to the asserted privileges. (*Id.* at 6–21).

As to the attorney-client privilege, Judge Leshner provided an explanation that while the purpose of the CIRB-related documents may have a legal component, this wasn't the primary purpose, which is why he applied "the primary purpose" standard adopted by the Ninth Circuit in *In re Grand Jury*. (*Id.* at 9). He determined the County didn't show that every communication memorialized in the CIRB Reports were made for the purpose of giving or seeking legal advice. (*Id.*). Judge Leshner cited to *Greer*, where a judge in this District already applied "the primary purpose" standard in considering whether the attorney-client privilege applies to CIRB Reports. (*Id.* at 10). He also conducted an *in camera* review of the thirty-five CIRB Reports and CIRB Spreadsheet, and determined the primary purpose of the communications wasn't to seek or received legal advice. (*Id.* at 11, 13). Although the County argues the purpose of CIRB is to seek and receive legal advice concerning critical events for risk management purposes, (Dkt. 231-1 at 9), it doesn't dispute that the CIRB Reports memorialize the discussions at the CIRB meetings and Section 4.23 requires the preparation of a CIRB Report without any legal advice from the Chief Legal Advisor, *Morton*, 2023 WL 5746921, at 5 (S.D. Cal. Sept. 6, 2023) (overruling the County's objections to Judge Leshner's discovery order requiring the production of CIRB Reports).

If there's more than one purpose for the CIRB, the County argues the D.C. Circuit's "a primary purpose" standard as established in *Kellogg* should apply. (Dkt. 231-1 at 12–13). The Court recognizes that the Ninth Circuit left open

whether the "a primary purpose" standard should apply. *See In re Grand Jury*, 23 F.4th at 1094–95. However, *Kellogg* isn't the standard in this Circuit, and it wasn't "clearly erroneous for Judge [Leshner] not to apply it." *In re Apple Inc. Sec. Litig.*, No. 19-cv-2033-YGR, 2022 WL 4351392, at *2 (N.D. Cal. Sept. 12, 2022).

The County further argues it's unfair to retroactively apply "the primary purpose" standard adopted by the Ninth Circuit in 2021 in *In re Grand Jury* to CIRB Reports when prior courts have ruled the attorney-client privileges do apply. (Dkt. 231-1 at 14–16). According to the County, it "has always considered and treated CIRB Reports as privileged and confidential, particularly because in 2015 Magistrate Judge Jan M. Adler determined that the CIRB Reports are protected by the attorney-client privilege and in 2017 Magistrate Judge Mitchell D. Dembin came to the same conclusion." (*Id.* at 14 (emphasis in original)). The Court doesn't need to address this argument because it was raised for the first time in the County's Objections. *Hendon*, 2012 WL 995757, at *1; *see also Hall*, 2021 WL 5077595, at *5. Nevertheless, the Court agrees with Plaintiffs' argument that *In re Grand Jury*'s "the primary purpose" standard is the controlling law in this Circuit and should be applied retroactively. *See, e.g.*, *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486 n.16 (1981); *Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 281 (1969) ("The general rule, however, is that an appellate court must apply the law in effect at the time it renders its decision."); *see also Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86, 97 ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *Snell v. G4S Secure Sols. (USA) Inc.*, 424 F. Supp. 3d 892, 897 (E.D. Cal. Dec. 19, 2019) (quoting *Nunez-Reyes v. Holder*, 646 F.3d 684, 690 (9th Cir. 2011) ("[I]t is the default principle 'that a court's decisions apply retroactively to all cases still pending before the courts.").

Nothing suggests that Judge Leshner committed clear error by applying the Ninth Circuit's "the primary purpose" standard instead of the D.C. Circuit's "a primary purpose" standard when coming to the legal conclusion that the CIRB documents weren't entirely privileged. The County also doesn't meet its burden demonstrating that the CIRB records as a whole are privileged. Judge Leshner properly conducted an *in camera* review of the thirty-five CIRB Reports and CIRB Spreadsheet and concluded that the entirety of these documents weren't drafted to seek or received legal advice. (See Dkt. 220 at 11–13). The Court **OVERRULES** the County's objections as it relates to the attorney-client privilege.

      ii.  <u>Work-Product Doctrine</u>

"The work product doctrine is a 'qualified privilege' that protects 'certain materials prepared by an attorney acting for his client in anticipation of litigation.'" *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (quoting *United States v. Nobles*, 422 U.S. 225, 237–38 (1975). "In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011). "In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Id.* at 568 (internal quotation marks and citations omitted).

The County, in passing, argues that the work-product doctrine applies to each of the thirty-five CIRB Reports because the "purpose of the CIRB is to consider and avoid the prospect of litigation resulting from critical incidents." (Dkt. 231-1 at 12). However, the County doesn't argue that the CIRB Reports were prepared exclusively for litigation. Judge Leshner properly applied the "because of" standard and determined the County didn't meet its burden "because Section 4.23 mandates the CIRB review process for all critical incidents whether or not

litigation is anticipated." (Dkt. 220 at 14 (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987); *Martin v. Evans*, No. C 08-4067 JW (MEJ), 2012 WL 1894219, at *5 (N.D. Cal. May 23, 2012); and *Greer*, 634 F. Supp. 3d at 921–22). The Court **OVERRULES** the County's objection as it relates to the work-product doctrine.

### iii. Relevance and Proportionality

"Typically, the relevance standard is broad in scope and 'encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issues that is or may be in a case.'" *Yphantides v. Cnty. of San Diego*, No. 21-cv-1575-GPC-BLM, 2022 WL 3362271, at *3 (S.D. Cal. Aug. 15, 2022) (alteration in original) (quoting *Doherty v. Comenity Cap. Bank & Comenity Bank*, No. 16-cv-1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017). District courts have broad discretion to determine relevancy for discovery purposes and to limit discovery to prevent abuse. *Id.* (citations omitted). "Further, '[w]hen analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (citations omitted).

According to the County, the thirty-two CIRB Reports and CIRB Spreadsheet are irrelevant because Serna's incident wasn't like the other instances of death contained in the CIRB documents. (Dkt. 231-1 at 17; 258 at 4). Judge Leshner properly addressed the County's reliance on *Gordon*, and decided that thirty-three of the thirty-five CIRB Reports were relevant and proportional under Rule 26 to help establish Plaintiffs' *Monell* claims. (Dkt. 220 at 22–24). One of the ways in which Plaintiffs can prove *Monell* liability is showing the government has a policy of inaction and such inaction amounts to a failure to protect constitutional rights. *Lee*, 250 F.3d at 681. The fact that there have been many instances of inmate

deaths may establish whether the County had a policy of inaction to protect inmates' constitutional rights. Thus, there's a need for these documents as Judge Leshner determined. The County hasn't presented any new grounds for reconsideration. *See Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."). The Court **OVERRULES** the County's objection as it relates to relevance and proportionality of the CIRB documents.

## V. CONCLUSION

The Court **ORDERS** as follows:

**1.** The request to bifurcate the *Monell* claims and stay *Monell*-related discovery is **DENIED**. (Dkt. 99).

**2.** The motion to seal is **DENIED**. (Dkt. 122). Plaintiffs have five days from the date of this Order to file an unredacted version of the opposition to the docket.

**3.** The County fails to meet its burden establishing any part of Judge Leshner's Discovery Order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); *see also Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp.*, No. 07-cv-90, 2007 WL 4357672, at *2 (S.D. Cal. Dec. 11, 2007) ("This Court's function, on a motion for review of a magistrate judge's discovery order, is not to decide what decision this Court would have reached on its own, nor to determine what is the best possible result considering all available evidence."). Judge Leshner's Discovery Order is **AFFIRMED** and the County's Objections are **OVERRULED**. (Dkt. 231).

**IT IS SO ORDERED**.

Dated: March 5, 2024

*Larry A. Burns*
Honorable Larry Alan Burns
United States District Judge