CLAUDIA G. SILVA, County Counsel (SBN 167868)
By: FERNANDO KISH, Senior Deputy (SBN 236961)
 SARAH LANHAM, Senior Deputy (SBN 213555)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-5244
E-mail: fernando.kish@sdcounty.ca.gov; sarah.lanham@sdcounty.ca.gov
*Attorneys for Defendants County of San Diego, William Gore, Barbara Lee, Lorna Roque, and Hazel Camama*

Katie K. Schuler, Esq.
Jeffrey Doggett, Esq.
LOTZ, DOGGETT & RAWLERS, LLP
101 West Broadway, Suite 1330
San Diego, CA 92101
T: (619) 233-5565
E-mail: kschuler@ldrlaw.com; jdoggett@ldrlaw.com
*Attorneys for Defendants Coast Correctional Medical Group, Mark O'Brien and Friederike Von Lintig*

Carrie Mitchell. Esq.
McDougal Boehmer Foley Lyon Mitchell & Erickson
8100 La Mesa Boulevard, Suite 200
La Mesa, CA 91942
T: (619) 440-4444
E-mail: cmitchell@mcdougallawfirm.com
*Attorneys for Defendant Danalee Pascua*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ELISA SERNA by and through its successor-in-interest BRANDON HONEYCUTT and S.H., by and through her guardian PALOMA SERNA; BRANDON HONEYCUTT; S.H., by and through her guardian PALOMA SERNA; MICHAEL SERNA, and PALOMA SERNA,<br><br> Plaintiffs,<br><br>      v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE in his individual capacity, BARBARA LEE, in her individual capacity, MARK O'BRIEN, in his individual capacity, FRIEDERIKE C. VON LINTIG, in her individual capacity, LORNA ROQUE, in her individual capacity, DANALEE PASCUA, in her individual capacity, HAZEL CAMAMA, in her individual capacity, LACEE LOVISA, in her individual capacity, REISHONE FOSTER, in her individual capacity, COAST CORRECTIONAL MEDICAL GROUP; and DOES 3-30,<br><br>      Defendants. | No. 20cv2096-LAB-DDL<br><br>**DEFENDANTS' BRIEF RE: MOTIONS TO FILE DOCUMENTS UNDER SEAL FILED WITH THE SUMMARY JUDGMENT MOTIONS [ECF 427]**<br><br>Dept.: 14A - Courtroom of the Honorable Larry A. Burns<br><br>Magistrate Judge David Leshner |

20cv2096-LAB-DDL

## Table of Contents

I.      INTRODUCTION ......................................................................................... 1

II.     LEGAL STANDARD ................................................................................... 1

III.    THE EXHIBITS FROM THE CRIMINAL ACTION ARE NOT PUBLICLY AVAILABLE AND REMAIN SEALED ......................................... 2

IV.     BEFORE CONSIDERING WHETHER TO SEAL/UNSEAL ANY RECORD, THE COURT SHOULD FIRST DETERMINE IF THE RECORD IS RELEVANT TO THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT ............................................................................................ 3

V.      EVEN IF RELEVANT TO THE PARTIES' SUMMARY JUDGMENT MOTIONS, CIRB RECORDS SHOULD REMAIN UNDER SEAL BECAUSE THEY IMPLICATE ATTORNEY-CLIENT PRIVILEGE ISSUES CURRENTLY PENDING BEFORE THE NINTH CIRCUIT AND INCLUDE PRIVATE MEDICAL RECORDS OF THIRD PARTIES .............. 5

        A.. The CIRB Records Should Remain Sealed At Least Until The Ninth Circuit Has Ruled on The Applicability of the Attorney-Client Privilege. .................................. 6

        B. The CIRB Records Should Remain Sealed Because They Include Private Medical Information of Third Parties. ................................................................................... 9

VI.     DECEDENT'S JAIL MEDICAL RECORDS, INCLUDING ANY JAIL VIDEO, SHOULD REMAIN UNDER SEAL TO PROTECT THE PRIVACY RIGHTS OF DECEDENT AND HER HUSBAND ............................................. 10

        A.. Decedent Husband's Privacy Rights Constitutes A Compelling Reason To Keep Decedent's Medical Records Under Seal. ............................................................. 10

        B. Even If Decedent Husband's Privacy Rights Are Disregarded, The Jail Video Should Remain Under Seal Because Public Disclosure Presents A Security Risk and Its Sensational Nature May Invite A Public Scandal. ..................................... 12

VII.    LAW ENFORCEMENT INVESTIGATION FILES ARE CONFIDENTIAL 14

        A. The Law Enforcement Investigation Files Should Remain Confidential. ......... 14

        B. The Internal Affair Investigation Records Are Confidential and Inadmissible. (Exs. 19, 20, 23, 27, 28, 36, 38-40) ..................................................................... 17

VIII. CONCLUSION ............................................................................................ 18

## Table of Authorities

**Cases**                                                                                                **Page(s)**

Asdale v. Int'l Game Tech, 2010 WL 2161930 (D. Nev. May 28, 2010) ........................ 6

Breed v. U.S.D.C., supra, 542 F.2d ................................................................. 16

Brown v. Flowers (10th Cir. 2020) 974 F.3d 1178 ........................................... 13

Catsouras v. Dept of California Highway Patrol (2010) 181 Cal.App.4th 856 ... 12, 14, 15

Chester v. King, No. 16-01257, 2019 WL 5420213 (E.D. Cal. Sep. 10, 2019) ............... 9

Chrisman v. Board of County Commissioners of Oklahoma County 2020 WL 12948695 (W.D. Okla., Oct. 9, 2020) ......................................................................... 13

Dunsmore v. San Diego County Sheriff's Department 2023 WL 3971042, (S.D. Cal., June 12, 2023) ...................................................................................... 9

Greer v. County of San Diego 2024 WL 993876, (S.D. Cal., Mar. 6, 2024) .................... 7

Hall v. County of Fresno, 2016 WL 374550 at *10 (E.D. Cal. Feb. 1, 2016) .................. 8

In re Anthem, Inc. Data Breach Litigation 2018 WL 3067783, (N.D. Cal., Mar. 16, 2018)  6

In re Copley Press, Inc., 518 F.3d 1022 (9th Cir. 2008) .................................... 8

ImprimisRx, LLC v. OSRX, Inc., 2023 WL 7135294 (S.D. Cal. Oct. 30, 2023) ............ 2

Kamakana v. City and County of Honolulu, 447 F.3d 1172 (9th Cir. 2006) .............. 1, 14

Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987) ......................................... 16

Kerr v. United States Dist. Ct. for N.D. Cal., 511 F.2d 192 (9th Cir.1975) .............. 15, 17

Lewis v. City of Manhattan Beach, 2023 WL 7634110 (C.D. Cal. Nov. 13, 2023) ..... 2, 3

Lin v. Suavei, Inc. (S.D. Cal., Nov. 13, 2023) 2023 WL 7501403 .................................. 6

Maddox v. City of Los Angeles, 792 F.2d 1408–18 (9th Cir. 1986) ............................. 18

National Archives and Records Admin. v. Favish (2004) 541 U.S. 157 ........................ 12

Nixon v. Warner Commc'ns, Inc., 435 U.S. 589 (1978) ...................................... 2

Ortiz v. City and County of San Francisco 2020 WL 2793615 (N.D. Cal., May 29, 2020) , ..................................................................................................... 10, 11, 12

Pitt v. Metro. Tower Life Ins. Co., 2022 WL 19001975 (S.D. Cal. July 22, 2022) .......... 1

Rauda v. City of Los Angeles, 2010 WL 11549632 (C.D. Cal. Feb. 22, 2010) ............. 18

**Table of Authorities**

**(continued)**

**Cases**                                                                                                    **Page(s)**

Rodriguez v. County of Los Angeles (9th Cir. 2018) 891 F.3d 776 ................................ 8

Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir. 1990) ........................................ 17

Skibo v. City of New York, 109 F.R.D. 58 (E.D.N.Y.1985) .......................................... 16

Soto v. City of Concord, 162 F.R.D. 603 (N.D. Cal. 1995) ...................................... 17-18

Solares v. Diaz (E.D. Cal., Jan. 3, 2024) 2024 WL 35998, at *2 x-12 x 3 ...................... 4

Specialty Surplus Ins. Co. v. Lexington Ins. Co., 2007 WL 2404703 (W.D. Wash. Aug. 17, 2007) ................................................................................................ 6

Sweiha v. County of Alameda, 2019 WL 4848227 (N.D. Cal. 2019) .............................. 5

Swidler & Berlin v. United States, 524 U.S. 399 (1998) ..................................... 6

Upjohn Co. v. United States, 449 U.S. 383 (1981) ........................................... 7

**Rules and Statutes**

Cal. Civ. Code section 56.05 ...................................................................... 9

Cal. Evid. Code section 1040 ..................................................................... 15

Cal. Evid. Code section 1045 ..................................................................... 17

Cal. Govt. Code section 7923.600 ................................................................. 17

Cal. Penal Code section 851.91 .................................................................... 2

Cal. Penal Code section 851.92 .................................................................... 2

45 C.F.R. section 160.103 ......................................................................... 9

## I.    INTRODUCTION

This case is undoubtedly unusual due, in large part, to the parallel criminal action against defendants Pascua and Von Lintig. The documents relating to this case have rightly been protected since the inception of this case and, due to a multitude of compelling reasons, not the least of which are the rights of defendants Pascua and Von Lintig, these documents must continue to be protected.

In addition to the fact that many of the documents at issue here remain sealed by order of Judge Selena Dong Epley of the Superior Court (Ex. A), these records are also protected in several other regards including by the attorney-client privilege (which issue is currently pending before the Ninth Circuit), HIPAA due to the medical privacy rights of decedent and third parties, and to protect against security and safety risks at the jail. Moreover, prior to even considering their confidentiality this Court should determine whether the multitude of exhibits offered by Plaintiffs are even relevant or admissible for purposes of summary judgment or otherwise. For all these reasons, and because Plaintiffs have made crystal clear their desire and intent to publicize the evidence in this case, this Court should continue to protect these documents from public disclosure.

## II.    LEGAL STANDARD

To support the sealing of documents filed in connection with a motion for summary judgment, the parties must demonstrate compelling reasons for the requested sealing which are supported by specific factual findings. *Pitt v. Metro. Tower Life Ins. Co.*, No. 20-CV-694-RSH-DEB, 2022 WL 19001975, at *2 (S.D. Cal. July 22, 2022). The Court must balance the competing interests of the public and the parties requesting the sealing of the records, and state the factual basis for its ruling. *Pitt*, *supra.* Although the public has an interest in understanding how cases are litigated and decided, the public's right to review judicial records "is not absolute." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify

- 1 -

private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Id* at 1179. "The decision to seal documents is 'one best left to the sound discretion of the trial court' upon consideration of 'the relevant facts and circumstances of the particular case.' *Nixon*, 435 U.S. at 599." *ImprimisRx, LLC v. OSRX, Inc*., No. 21-CV-01305-BAS-DDL, 2023 WL 7135294, at *1 (S.D. Cal. Oct. 30, 2023).

## III.    THE EXHIBITS FROM THE CRIMINAL ACTION ARE NOT PUBLICLY AVAILABLE AND REMAIN SEALED

Though the criminal action is concluded, the rights of Pascua and Von Lintig have not been terminated, nor has the protective order governing the exhibits submitted at the preliminary hearing, which remains in effect. (See, Ex. A, p. 2:1-4, attached hereto.) On March 1, 2024, defendant Pascua filed a petition for sealing of arrest records, which should be sealed as a matter of right (Cal. Penal Code §851.91(c)), and which encompasses, among other things, all court exhibits. (Ex. B; Cal. Penal Code §851.92(d)(2).)

Further, Plaintiffs are fully aware that many of the exhibits at issue here are still protected by the criminal court because on February 28, 2024, Plaintiffs' counsel submitted a request to view, photograph or copy those exhibits (Ex. A., pp. 3-11) which has yet to be ruled upon and for which briefing is due on April 18. (*Id*., at p. 2:15-18.) Regardless, Superior Court Judge Epley's March 27, 2024 order makes clear that "[a]ny order granting viewing and copying of exhibits shall be subject to an additional protective order to be signed and returned to the court before exhibit access is granted." (*Id*., at p. 2:20-22.)

As such, there are two protective orders at issue here, and the compelling interests of comity and privacy (*See, e.g., Lewis v. City of Manhattan Beach*, No. 22023CV03319WLHRAO, 2023 WL 7634110, at *1 (C.D. Cal. Nov. 13, 2023)), along with the compelling interests of privilege, safety and security, require that the exhibits at issue remain sealed.

/ / /

/ / /

/ / /

20cv2096-LAB-DDL

**IV.    BEFORE CONSIDERING WHETHER TO SEAL/UNSEAL ANY RECORD, THE COURT SHOULD FIRST DETERMINE IF THE RECORD IS RELEVANT TO THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

In February 2023, after extensive meet and confer efforts, the parties submitted a Protective Order, which this Court approved. *See* ECF Doc 91, 94 & 95. By their own words "Plaintiffs agree[d] that confidential information related to the parties, including personnel files, Internal Affairs reports, and homicide files, are confidential and subject to protection." ECF Doc 91, 2:22-24. The Protective Order says "*[t]he Court finds that there is good cause* to enter the parties agreed-upon protective order ...." ECF Doc 95, page 1 (emph. added). In support of its finding for good cause, the Court recognized that video footage of the incident, jail records, CLERB records, and medical records of Ms. Serna and third parties are not generally available to the public—these are the very documents at issue here. *Id*.

Nearly a year after they were produced, Plaintiffs are now challenging the confidentiality designation of those records under the Protective Order. *See* ECF Doc 422. But as set forth in Defendants' response to that challenge, Plaintiffs' request is untimely and without merit. *See* ECF Doc 429 & 433. Hoping to circumvent the deadlines in Judge Leshner's Chamber Rules and the Protective Order itself, Plaintiffs attached 85 exhibits to their opposition to Defendants' summary judgment motions. Those exhibits are 2176 pages long and take up nine volumes in Plaintiffs' appendix of exhibits. *See* ECF Doc 348, Pltfs' Appendix at pp 56-64 & 2081-2083. This does not include the additional hours of video surveillance footage that Plaintiffs added to their opposition (ECF Doc 354 ) and the twelve exhibits that Plaintiffs attached to their own motion for summary judgment. *See* ECF Doc 315-8. Moreover, much of the video is likely irrelevant because what is depicted from *inside* the cell is not what jail or medical staff observed. In short, it is inconceivable that all of these exhibits are relevant to any material issue in dispute in the parties' motions for summary judgment.[1]

---

[1] By way of example, Plaintiffs attached their experts' CV, fee schedules and prior trial/deposition testimony as part of their exhibits. Defendants do not contend that those

- 3 -

20cv2096-LAB-DDL

As it pertains to the sealing issue, the Court should consider whether a record should be sealed as part of its analysis of the parties' motions for summary judgment. If the Court determines that an exhibit is not relevant to any material issue in dispute, or that the Court cannot consider the exhibit because of an evidentiary objection (*See* ECF Doc 340-1 & 363-1), then the Court need not reach the sealing issue and instead simply strike that exhibit(s) from the record. Doing so will relegate those exhibits back to the discovery file and appropriately defer the confidentiality determination under the protective order to the magistrate judge. To do otherwise would force the trial judge to make unnecessary confidentiality determinations regarding exhibits that are irrelevant to any issues in dispute in the pending motions and that may never be used at trial. *See generally*, *Solares v. Diaz* (E.D. Cal., Jan. 3, 2024, No. 120CV00323JLTBAM) 2024 WL 35998, at *2 ("This procedure will unnecessarily burden the trial judge and delay trial. The trial judge will be asked to make numerous, individual confidentiality determinations in advance of trial as to documents which may not be used at trial.")

Perhaps more importantly, the trial judge should not make a confidentiality determination as to exhibits deemed irrelevant or otherwise not considered as part of the parties' summary judgment motions because doing so would render the Protective Order the parties voluntarily entered into meaningless. In other words, Plaintiffs should not be permitted to circumvent the deadlines in Judge Leshner's Chamber Rules and the proscriptions of the Protective Order itself by simply attaching exhibits to a dispositive motion or opposition no matter how irrelevant those exhibits are to such a motion. Indeed, in ruling on various discovery issues in this case, Magistrate Judge Leshner relied on the Protective Order as a basis to allow discovery but still protect legitimate privacy concerns. *See* ECF Doc 220, 17:10-11 ("And the operative Protective Order assuages any concern

---

parts of Plaintiffs' experts' reports are confidential. However, those portions of Plaintiffs' exhibit are also irrelevant to any issues raised the parties' summary judgment motions and should not have been submitted in the first place. Indeed, during meet and confer efforts as ordered by this Court (see ECF Doc 427), Defendants offered to discuss those portions of Plaintiffs exhibits to remove them from the sealing discussion. However, Plaintiffs denied the offer as an unfruitful use of time. A substantial portion of the jail video footage is also likely irrelevant since it does not show what the medical staff actually witnessed.

- 4 -

20cv2096-LAB-DDL

that information about nonparties would be disclosed outside of the litigation"), 20:12-13 ("production pursuant to the Protective Order 'will sufficiently protect [the County's] interest'"); 22:18-19 ("The existing Protective Order adequately protects these privacy concerns"). Judge Leshner's rationale to protect legitimate privacy concerns would also be rendered meaningless if Plaintiffs are simply allowed to attach irrelevant exhibits to a dispositive motion simply to have otherwise confidential materials unsealed under the more difficult to meet "compelling reason" standard. As such, before reaching the issue as to whether any exhibit or filing should be unsealed, Defendants request that the Court first consider the exhibit or filing has any relevance to the parties' motions for summary judgment.

## V.    EVEN IF RELEVANT TO THE PARTIES' SUMMARY JUDGMENT MOTIONS, CIRB RECORDS SHOULD REMAIN UNDER SEAL BECAUSE THEY IMPLICATE ATTORNEY-CLIENT PRIVILEGE ISSUES CURRENTLY PENDING BEFORE THE NINTH CIRCUIT AND INCLUDE PRIVATE MEDICAL RECORDS OF THIRD PARTIES

As part of their opposition to Defendants' motions for summary judgment, Plaintiffs submitted–conditionally under seal–CIRB reports for nine separate incidents. *See* ECF Doc 383, Exs. 44-50, 52 & 54.[2] However, none of those incidents have any relevance to any issue raised in Defendants' summary judgment motions as they involve circumstances completely dissimilar to the unique set of facts presented in this case. *See* ECF Doc 363, 13:14-16:3; *see also*, *Sweiha v. County of Alameda*, 19-cv-03098-LB, 2019 WL 4848227, at *4–5 (N.D. Cal. 2019) (plaintiff's allegations of five other incidents do not show a custom or policy where the incidents "have markedly different facts"). Because these exhibits are irrelevant to the resolution to any dispositive motion pending before this court, they should be stricken from the records (*See* ECF Doc 363-1, County Defendants' Evidentiary Objections) and remain subject to the protective order.

---

[2] Ex. 43 also contains additional CIRB reports. However, Plaintiffs withdrew that exhibit after the Court in *Greer v. County of San Diego*, S.D. Cal. Case No. 19-00378-JO-DEB determined that Plaintiffs' counsel had violated the protective order in that case by using the CIRB reports in Ex. 43 in this case. *See* ECF Doc 381, 393 & 396.

- 5 -

20cv2096-LAB-DDL

Even if the Court were to consider these exhibits relevant to the pending motions for summary judgment, the County's assertion of attorney-client privilege and third-party privacy rights are both compelling reasons sufficient to keep these records sealed.

### A.    The CIRB Records Should Remain Sealed At Least Until The Ninth Circuit Has Ruled on The Applicability of the Attorney-Client Privilege.

The disclosure of the CIRB reports in this and other cases has been highly contested. *See* ECF Doc 141, 143, 152, 153, 184, 184, 231-1, 413; *see also*, *Greer v. County of San Diego*, S.D. Cal. Case No. 19-00378-JO-DEB; *Morton v. County of San Diego, et al.*, S.D. Cal. Case No. 21-CV-1428-MMA (KSC); *Estate of Omar Arroyo Moreno v. County of San Diego*, S.D. Cal. Case No. 20-CV-00406-AJB-DDL. Indeed, the County has consistently asserted that CIRB reports are legal memoranda protected by attorney-client and work product privileges.

"Courts have accepted attorney–client privilege and the work-product doctrine as sufficient justifications for sealing, even under the higher 'compelling reason' standard." *In re Anthem, Inc. Data Breach Litigation* (N.D. Cal., Mar. 16, 2018, No. 15-MD-02617-LHK) 2018 WL 3067783, at *3 (collecting authority); *see also*, *Lin v. Suavei, Inc.* (S.D. Cal., Nov. 13, 2023, No. 3:20-CV-0862-L-AHG) 2023 WL 7501403, at *3 (The court granted a request to seal exhibits that contain attorney-client privilege and work-product information.); *see also, Asdale v. Int'l Game Tech.*, No. 3:04-CV-703-RAM, 2010 WL 2161930, at *4 (D. Nev. May 28, 2010) ("The public interest in accessing the courts does not outweigh the compelling need to . . . honor the attorney-client privilege."); *Specialty Surplus Ins. Co. v. Lexington Ins. Co.*, No. C06-5246RJB, 2007 WL 2404703, at *18 (W.D. Wash. Aug. 17, 2007) ("The public interest in accessing the courts does not outweigh the compelling need to honor the attorney-client privilege.")

The importance of the attorney-client privilege cannot be overstated. It "is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). By assuring confidentiality, the privilege encourages clients to make "full and frank" disclosures to their attorneys, who are then better able to

20cv2096-LAB-DDL

provide candid advice and effective representation. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). This, in turn, serves "broader public interests in the observance of law and administration of justice." *Id*.

Although this Court has ruled that–except for some limited redactions–the attorney-client privilege and work product doctrine does not apply to the CIRB reports, that precise issue is currently pending before the Ninth Circuit in *Greer v. County of San Diego*, Ninth Circuit Case No. 23-55607. *See*, *Greer v. County of San Diego* (S.D. Cal., Mar. 6, 2024, No. 19-CV-0378-JO-DEB) 2024 WL 993876, at *1 ("[T]he privilege issue remains a live controversy in the Ninth Circuit by virtue of the County's appeal of the district judge's Order Granting Media Intervenors' Motion to Intervene and Unseal.") In deciding against modifying the protective order in that case to allow certain CIRB reports to be used in this case, the *Greer* court specifically ruled as follows:

> If the County's privilege claim succeeds on appeal, then this Court would have erred in compelling production of the CIRB Reports. Thus, **whether the CIRB Reports may be used in *Serna* is the mirror image of the question pending before the Ninth Circuit**. Significantly, the Ninth Circuit granted the County's Motion to Stay this Court's July 11, 2023 order unsealing the CIRB Reports, **thereby prohibiting public dissemination of the CIRB Reports until the appeal is resolved.**

*Greer v. County of San Diego*, 2024 WL 993876, at *3 (emphasis added). That appeal– *which encompasses the same questions of privilege and work product that are at issue here*–is well underway, and briefing is scheduled to be completed within a matter of weeks (*i.e.*, by April 22, 2024), with oral arguments anticipated in July/August 2024.

Should the Court order these CIRB reports unsealed, the media[3]–if not the Plaintiffs themselves[4]–are poised to publicize them the moment they are available on the public docket. If the reports are unsealed and the media intervenors are free to publicize them in the press, then the consequences will be profound. Law enforcement officials, from commanders to line deputies, will be on notice that their communications to legal counsel

---

[3] Just yesterday, April 2, 2024, attorneys for the same media intervenors as in *Greer* filed a motion to intervene for the purpose of unsealing the CIRB and other records in this case. *See* ECF Docs 436-437.

[4] Plaintiffs' counsel has repeatedly and publicly indicated Plaintiffs' intent and desire to put the case documents, in particular the jail video, on the internet.

- 7 -

are not protected, that trust cannot be assured, and that anything they say may well be featured in a news article or on the nightly news. Where communications had been candid and open, they will become hesitant and guarded.

This, of course, can never be undone, and the County would be forever deprived of any opportunity to obtain review. *See In re Copley Press, Inc.,* 518 F.3d 1022, 1025 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published, it cannot be made secret again."). Prudence dictates that the Ninth Circuit should have an opportunity to address good faith issues of circuit-wide importance, and that this Court should not take action (*i.e.*, immediate unsealing) that would interfere with the Ninth Circuit's exercise of its appellate jurisdiction.[5] This is particularly true because the great bulk of the pleadings in this litigation have been filed publicly and a criminal proceeding took place that was mostly open to the public. Thus, "the public's interest in understanding [the] litigation and its underlying issues will not be meaningfully hampered or harmed by keeping" select records under seal. *Hall v. County of Fresno*, No. 1:11-cv-2047-LJO-BAM, 2016 WL 374550 at *10 (E.D. Cal. Feb. 1, 2016). The public's interest in having access to a handful of additional documents–which were prepared with the understanding that they were privileged and confidential–is far outweighed by the public's interest in preserving candid and open discussion between law enforcement officials and their counsel. Accordingly, to prevent irreparable invasion of the attorney-client privilege and preserve the status quo pending appeal, this Court should deny Plaintiffs' request to unseal the CIRB reports.

There is no prejudice that Plaintiffs will suffer if these records remain sealed. Nor does allowing the Ninth Circuit to weigh in prejudice any purported public interest in these

---

[5] Although not directly applicable in this context because the appeal is pending in another case, the Court should consider the public policy behind the divestiture of jurisdiction rule and keep these records under seal until the Ninth Circuit weighs in to avoid the confusion and the judicial waste of having the same issue pending before two courts at the same time. *See generally*, <u>Rodriguez v. County of Los Angeles</u> (9th Cir. 2018) 891 F.3d 776, 790 ("The 'divestiture of jurisdiction rule is not based upon statutory provisions or the rules of civil or criminal procedure. Instead, it is a judge made rule originally devised in the context of civil appeals to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.'")

20cv2096-LAB-DDL

reports. If the Court decides against sealing these CIRB records, the County requests a brief waiting period of at least 5 business days to permit time for an emergency request for stay to the Ninth Circuit.

**B.      The CIRB Records Should Remain Sealed Because They Include Private Medical Information of Third Parties.**

The Health Insurance Portability and Accountability Act ("HIPAA") protects a person's personal health information ("PHI") for 50 years after death. 45 C.F.R. § 160.103 (2)(iv). This Court has in this case cited this authority with approval. *See* ECF Doc 220 ("As to the privacy rights of individuals who died in Sheriff's Department custody, the County correctly points out the Health Insurance Portability and Accountability Act ("HIPAA") protects personal health information for 50 years after death. 45 C.F.R. § 160.103.") Similarly, California's Confidentiality of Medical Information Act protects from disclosure medical information of patients whether they are living or not. Cal. Civ. Code § 56.05(i) & (l).

This Court has already recognized that these records contain "confidential medical information regarding individuals who died in Sheriff's Department custody." ECF Doc 220, 21:19-20. When deciding that the CIRB reports should be produced in discovery, the Court did so because the "existing Protective Order adequately protects these privacy concerns." *Id.* at 22:18-20. Plaintiffs now wish to file these records on the public docket without regard to these third-party privacy rights. However, this Court should not allow it because these medical privacy rights constitute a compelling reason that support continued protection. Specifically, "[t]he court recognizes that the need to protect medical privacy has qualified as a 'compelling reason' for sealing records." *Dunsmore v. San Diego County Sheriff's Department* (S.D. Cal., June 12, 2023, No. 20-CV-00406-AJB-DDL) 2023 WL 3971042, at \*2; *See also, Chester v. King*, No. 16-01257, 2019 WL 5420213, at \*2 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

20cv2096-LAB-DDL

In *Ortiz v. City and County of San Francisco* (N.D. Cal., May 29, 2020, No. 18-CV-07727-HSG) 2020 WL 2793615, at *9, the Court considered a similar issue as to plaintiff's medical records and ruled as follows:

> Defendants argue that the 'request to seal is based on plaintiff's right to privacy and federal and state laws protecting the confidentiality of an individual's personal health information.' *Id.* The Court agrees that health records properly meet the compelling reasons standard. *See San Ramon Reg'l Med. Ctr., Inc. v. Principal Life Ins. Co.*, No. 10–cv–02258–SBA, 2011 WL 89931, at *1 n.1 (N.D. Cal. Jan. 10, 2011) (finding that confidentiality of medical records under the Health Insurance Portability and Accountability Act of 1996 outweighed *Kamakana* presumption in favor of public access to court records). The Court **GRANTS** Defendant's motion to seal Exhibit I.

*Id*, at *9 (emphasis in original). Accordingly, to protect the medical privacy rights of third parties, the Court should order these CIRB reports sealed.

## VI. DECEDENT'S JAIL MEDICAL RECORDS, INCLUDING ANY JAIL VIDEO, SHOULD REMAIN UNDER SEAL TO PROTECT THE PRIVACY RIGHTS OF DECEDENT AND HER HUSBAND

### A. Decedent Husband's Privacy Rights Constitutes A Compelling Reason To Keep Decedent's Medical Records Under Seal.

The overwhelming bulk of the exhibits and pleadings that were filed conditionally under seal[6] are the decedent's jail medical records or information gleaned from those records in the form of depositions, declarations, investigation material, and expert reports. In addition, Plaintiffs submitted hours' worth of jail video footage that depict the decedent's final day in jail and the area immediately adjacent to where she was housed. As stated above, the parties negotiated and voluntarily entered into a Protective Order to preserve the confidentiality of these records. *See* Dkt. Nos. 91, 94 & 95. "Plaintiffs

---

[6] The sheer mass of confidential exhibits is such that it is virtually impossible to singularly address each one. However, all of the pleadings filed in connection with the parties' motions for summary judgment, including the County's Daubert motions, contain at least some redacted portions that contain information gleaned from decedent's medical records. *See* ECF Doc 439-1, pp 1-3. In addition to plaintiffs' Exhibits 2, 3, 5, 9, 10, 15-17, 24-26, 29-31, 33-34, 57-65, 68-70, 72-85, all of the jail video submitted by plaintiffs listed on ECF Doc 439-1, pp. 9-10, County Defendants' MSJ Exhibits C, D, G, H, I, K, L, S, T, U, AA, DD, along with the declarations of Roque, Camama, and Ronglien-Hood (ECF Doc 439-1, pp. 17) and County Defendants' Opposition to Plaintiffs' MSJ Exhibits A-E, and Von Lintig's Exhibits A, B, D, E, F, H-N, Q-T

- 10 -

20cv2096-LAB-DDL

agree[d] that confidential information related to the parties, including personnel files, Internal Affairs reports, and homicide files, are confidential and subject to protection." Dkt. No. 91, 2:22-24. As stated previously, confidential health records meet the "compelling reason" standard sufficient to warrant an order to seal such records. *Ortiz v. City and County of San Francisco* (N.D. Cal., May 29, 2020, No. 18-CV-07727-HSG) 2020 WL 2793615, at \*9 ("The Court agrees that health records properly meet the compelling reasons standard.")

After the recent conclusion of the related criminal proceedings, Plaintiffs now wish to remove the confidentiality designation of these records based, in part, on their representation that these materials were made public as part of the criminal case. *See* ECF Doc 422. However, contrary to Plaintiffs' representations, there is no indication that any of the exhibits or filings that are the subject of the present sealing issue are publicly accessible from the criminal court. *See* ECF Doc 429 & 433. In fact, it appears that the exhibits from that criminal proceeding are also subject to a sealing order or otherwise unavailable to the public. *Id*. If indeed exhibits were publicly accessible from the criminal court, then those exhibits would not be the subject of this present dispute. If Plaintiffs' representations are correct, then whatever public interest exists as to those exhibits has already been satisfied by virtue of them being publicly available from that criminal proceeding.

More recently, Plaintiffs have provided authorization to release the decedent's medical records signed by the representative of the decedent's estate. Missing from this authorization is any representation made by or on behalf of decedent's husband, Brandon Honeycutt. Mr. Honeycutt is the surviving husband of Elisa Serna, was originally a plaintiff in this case, and previously represented by Plaintiffs' current counsel of record. See ECF Doc 1. On March 31, 2023, Mr. Honeycutt voluntarily–and without explanation– dismissed all of his claims. ECF Docs 111 & 120. The County has been trying to depose Mr. Honeycutt since April of last year. ECF Doc 423. Now represented by new counsel– presumably due to a conflict of interest with the Plaintiffs–Mr. Honeycutt was served with

- 11 -

a deposition subpoena.[7] As such, the decedent's medical records and jail video footage should, at a minimum, remain sealed until Mr. Honeycutt has an opportunity to communicate his position regarding his wife's confidential medical records.

In fact, because Mr. Honeycutt dismissed his claims before discovery commenced in this case, it is possible that he has not seen any of his wife's medical records or jail video footage. Seeing such information for the first time on the evening news or the internet would be a shock to any husband, particularly since the records contain information that may be unknown to him and emotionally jarring. *See*, *National Archives and Records Admin. v. Favish* (2004) 541 U.S. 157, 167 (In evaluating an exemption under the Freedom of Information Act, the court concluded that the legislature "intended to permit family members to assert their own privacy rights against public intrusions long deemed impermissible under the common law and in our cultural traditions" and that it "[had] little difficulty ... in finding in our case law and traditions the right of family members ... to limit attempts to exploit pictures of the deceased family member's remains for public purposes."); *See also, Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 872, as modified on denial of reh'g (Mar. 1, 2010) (This right of privacy of surviving family members is not limited to Freedom of Information Act context.) As such, the decedent's confidential medical records and jail video footage should not be made publicly available without Mr. Honeycutt's approval.

**B.      Even If Decedent Husband's Privacy Rights Are Disregarded, The Jail Video Should Remain Under Seal Because Public Disclosure Presents A Security Risk and Its Sensational Nature May Invite A Public Scandal.**

The Court should keep sealed the hours of jail video surveillance footage submitted by Plaintiffs as part of their exhibits to the parties' motions for summary judgment because doing otherwise would jeopardize jail safety and security. The Court in *Ortiz v. City and County of San Francisco* (N.D. Cal., May 29, 2020, No. 18-CV-07727-HSG) 2020 WL

---

[7] Mr. Honeycutt did not appear for his scheduled deposition on March 12, 2024. Apparently, Mr. Honeycutt's new attorney is having difficulty reaching him. However, the County and Mr. Honeycutt's new attorney are still in discussions to reschedule his deposition.

- 12 -

20cv2096-LAB-DDL

2793615, at *8 considered the same issue. Specifically, defendants in that case sought an order to seal exhibits that contained County jail surveillance videos. *Id*. In support of their request, defendants argued that the videos showed "the layout of the jail, entry and exit points, angles of the cameras, and other securities [sic] concerns." *Id*. In applying the "compelling reason" standard under *Kamakana*, the Court ruled that "while the benefits of disclosure are significant, the disadvantages are substantially higher. These security concerns, in addition to privacy concerns of third parties and Plaintiff, who appears naked in two of the videos, outweigh the benefit of public disclosure at this stage in the case." *Id*.

The *Ortiz* Court is not alone as other courts have decided similarly when confronted with the same issue. *See, Chrisman v. Board of County Commissioners of Oklahoma County* (W.D. Okla., Oct. 9, 2020, No. CIV-17-1309-D) 2020 WL 12948695, at *1–2 (The Court sealed jail surveillance video after it concluded that the "videos could be harmful to the security of the jail in the event they are released in the public domain" because the "video footage shows dead spots in the video surveillance—a person could watch the videos and determine where to stand to avoid coverage of the cameras" and "include[d], at length, graphic depictions of emergency medical care provided to the decedent."); *see also*, *Brown v. Flowers* (10th Cir. 2020) 974 F.3d 1178, 1188 (The Court ordered jail videos sealed where defendant jailer argued that "the jail records should remain sealed for the safety of the jail, as they show which areas of the jail are surveilled and the methods by which the Sheriff investigates criminal conduct within the jail.")

Here, just like in *Ortiz, Chrisman, and Brown*, the Court should keep the jail video surveillance videos sealed to preserve the safety and security of jail staff and operations. Similar to the videos in those other cases, the videos here show not only the cell where decedent was housed but also the adjacent hallway, including entry/exit points and also where the deputies and nurses are stationed. Anyone viewing this footage could determine what parts of this area of the jail are under surveillance and find dead spots to avoid coverage of the cameras. This would create the risk of hiding contraband, including drugs and makeshift weapons or other impermissible or unwanted activity including self-harm. In

20cv2096-LAB-DDL

addition, like the circumstances in *Chrisman*, the jail video footage here depicts in graphic detail the condition, medical treatment, and ultimate death of the decedent. There are at least some instances in which the decedent is depicted with little clothing or without a shirt.

To make matters worse, much of what is depicted from inside the cell is not what jail or medical staff observed on that day. Thus, that particular footage does not further any public interest in understanding the treatment/care provided to the decedent in jail. Instead, it creates the false impression that what is seen on the video is what was observed by jail staff.

Given the graphic nature of what is depicted in these videos, the risk of morbid curiosity is possible if not likely. And once it is released to the public, there is nothing that Plaintiffs or anyone can do to prevent it from widespread dissemination on the internet, with the attendant risk of public scandal. *Kamakana v. City and County of Honolulu* (9th Cir. 2006) 447 F.3d 1172, 1179 ("In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to . . . promote public scandal . . ..") *See generally, Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 864, as modified on denial of reh'g (Mar. 1, 2010) ("the CHP and its officers owed plaintiffs a duty of care not to place decedent's death images on the Internet for the purposes of vulgar spectacle.") Accordingly, all of the jail videos should remain under seal.

**VII.    LAW ENFORCEMENT INVESTIGATION FILES ARE CONFIDENTIAL**

**A.    The Law Enforcement Investigation Files Should Remain Confidential.**

**(Plaintiffs' Exs. 3, 15, 18, 21, 25, 30, 31, 33, 55, 66, 67, 72, 73, Jail surveillance video of Elisa Serna on November 11, 2019 from 11:42 to 11:45 a.m., Jail surveillance video of Elisa Serna on November 11, 2019 from 11:40 a.m. to 11:45 a.m., Jail surveillance video of Elisa Serna on November 11, 2019 from 12:55 p.m. to 12:56 p.m., Jail surveillance video of Elisa Serna on November 11, 2019 from 12:57 p.m. to 1:16 p.m., Jail surveillance video of Elisa Serna on November 11, 2019 from 1:16 p.m. to 4:24 p.m., Jail surveillance video of Elisa Serna on November 11, 2019 from the hours of 4:25 p.m. to 6:47 p.m., Jail surveillance video of Elisa Serna on November 11, 2019 from the hours of 6:48 p.m. to 8:16 p.m., audio recordings of homicide interviews of Gardner, Taketa, Brannan,**

**Coronado, Roque, Von Lintig, Rabusa, Cardenas, Lovisa, Hall-Bennetts, & Nava; County Defendants' Exs. C, I, K, L, S-U, AA, DD; Von Lintig Exs. B, E, F, H-K, Q, S**

The Protective Order, as stipulated to by the parties and ordered upon a finding of good cause by the Court, specifically acknowledges that jail records and video, internal affairs investigations, information maintained for law enforcement purposes, and personnel files contain "private, privileged or confidential information that is not generally available to the public." [ECF Doc. 95, p. 1:21-28.] Under the Order, certain categories of documents were deemed confidential and subject to the protection of the Order including personnel records, internal affairs investigations, unredacted videos and photographs, jail records, and Ms. Serna's and third-party medical records. *Id*. at ¶1.a.

Now, Plaintiffs seek to remove from the Order's protection the County's law enforcement investigation files including, without limitation, its records from the homicide investigation along with the jail records and video, discussed above.

"Federal common law recognizes a qualified privilege for official information." *Kerr v. United States Dist. Ct. for N.D. Cal.*, 511 F.2d 192, 198 (9th Cir.1975), aff'd, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). "'[O]fficial information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made. Cal. Evid. Code § 1040(a). Here, the records of the homicide investigation and law enforcement investigation records relating to Ms. Serna are confidential and have been protected throughout this litigation. The reasons the confidentiality of these records must be maintained are: (1) to ensure the public and jury is not misled or confused by these records, particularly since defendant Pascua was acquitted and the criminal charges against defendant Von Lintig were dismissed, and (2) to maintain the confidentiality and security of the jail's operations including videos and photographs of its exits, doors, passageways and camera angles; information concerning its investigatory processes; and timing of nurses and deputies rounds and checks from current and future incarcerated persons who could use such information to their benefit. Moreover, as discussed above, many of these

20cv2096-LAB-DDL

exhibits are currently sealed by the criminal court, and are likely to remain so as a result of defendant Pascua's pending petition.

Though this Court should generally follow federal law concerning issues of privilege, confidentiality and privacy, as a matter of comity, in making its determination concerning these records the Court should consider California's interests in these protections and the reasons therefore:

> As a matter of comity, federal courts should attempt to ascertain what interests inspire relevant state doctrine and should take into account the views of state authorities about the importance of those interests. See *Skibo v. City of New York*, 109 F.R.D. 58, 61 (E.D.N.Y.1985). See also *Breed v. U.S.D.C.*, supra, 542 F.2d at 1115 (stating that state law, while not binding, can be a useful referent). When it is clear that a desire to ward off civil rights plaintiffs played no role in the formulation of state privilege rules it would be irrational for a federal court to assume that it could learn nothing from state or local views about the severity of the problems that could be created if certain kinds of information were available to civil litigants. Likewise, federal courts generally should give some weight to privacy rights that are protected by state constitutions or state statutes. Of course, ultimate responsibility for deciding how much weight to ascribe to such interests, and how that weight compares with the significance of competing interests, must reside with the federal courts.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). Here, California's Public Records Act provides that police investigation files are exempt from public disclosure:

> Except as provided in Sections 7924.510,[8] 7924.700,[9] and 7929.610,[10] this division does not require the disclosure of records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, … state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes.

---

[8] Air pollution data.
[9] Records of housing or building code violations.
[10] Department of Education Statewide testing records.

20cv2096-LAB-DDL

Cal. Govt. Code § 7923.600(a). Law enforcement records can remain protected as confidential even after investigation ends. *State Office of Inspector General v. Superior Court* (2010) 189 Cal,App.4th 695.

Given the compelling needs to: (1) ensure a fair trial by avoiding tainting the jury and/or jury confusion relating to the homicide investigation, and (2) to protect the safety and security of those in the jail, the County's law enforcement investigative records and homicide files should continue to be protected as confidential.

**B.    The Internal Affair Investigation Records Are Confidential and Inadmissible. (Exs. 19, 20, 23, 27, 28, 36, 38-40)**

Plaintiffs seek the public disclosure of confidential internal affairs/personnel records. As discussed above, federal law provides for a qualified privilege for official information. *Kerr, supra.* And, "[g]overnment personnel files are considered official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990), as amended on denial of reh'g (Feb. 27, 1991), as amended on denial of reh'g (May 24, 1991).

In addition, California Evidence Code section 1045(e) provides that records of officer discipline, if ordered produced shall, be protected by an "order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law." Also, section 1045(c) requires that, "[i]n determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records." Here, Plaintiffs have maintained throughout this litigation that they have a plethora of evidence to prove their *Monell* claim. As such, the use and public disclosure of confidential personnel and internal affairs records is not warranted.

Further, in cases, like this, wherein internal affairs records have been ordered produced in discovery, the individuals' privacy rights in those documents are protected by a "carefully crafted protective order. *Soto v. City of Concord*, 162 F.R.D. 603, 617 (N.D.

- 17 -

Cal. 1995) (personnel and internal affairs documents "may be sufficiently protected with the use of a 'tightly drawn' protective order, specifying that only Plaintiff, his counsel, and his experts may have access to the material, and that copies of such material will be returned to Defendants at the conclusion of the case.") Here, Plaintiffs seek to release confidential, private internal affairs records concerning both parties (Pascua) and non-parties (Lovisa and Foster) to the public. There is no basis or need for such disclosure.

Further, internal affairs records are inadmissible as remedial measures. *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417–18 (9th Cir. 1986) ["The Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident. Pursuant to Fed.R.Evid. § 403, evidence of these proceedings was therefore properly excluded with respect to the City's liability. ….The prejudicial effect of this evidence was also arguably great. The jury might have inferred that Officer Harris was guilty of wrongdoing merely because the Police Department conducted disciplinary proceedings. The jury might have given unfair or undue weight to this evidence or they might have been confused as to the relevance of this evidence."]; *See also Rauda v. City of Los Angeles*, No. CV08-3128-CAS (PJW), 2010 WL 11549632, at *9–10 (C.D. Cal. Feb. 22, 2010)(probative value of police disciplinary records in support of plaintiff's *Monell* claim was "outweighed by the risk of undue prejudice with regard to the liability phase of the trial.")

Given all the foregoing, the confidentiality of the internal affairs records should be maintained because (1) they are inadmissible and should not be considered in support of summary judgment, and (2) they are unduly prejudicial. Overall, if these documents will not be seen by the jury, they certainly should not be released to the public.

## VIII.  CONCLUSION

It is clear that the interests of privacy, comity, privilege, security, and judicial economy weigh in favor of maintaining the confidentiality of the records at issue. For example, on one hand, there is no prejudice to Plaintiffs as they have seen all of these records, while on the other, the privacy rights of defendants Pascua and Von Lintig and the

- 18 -

20cv2096-LAB-DDL

attorney-client privilege of the Sheriff's Department will be forever waived if the records are disclosed. There is simply no good reason to force a waiver of these rights, while there are compelling reasons to maintain all of the rights accompanying these confidential records. For all of these reasons, Defendants respectfully request the Court to maintain the confidentiality of all of these records under the agreed-upon Protective Order.

DATED: April 3, 2024            CLAUDIA G. SILVA, County Counsel

                                By: s/ Fernando Kish
                                Fernando Kish, Senior Deputy
                                Attorneys for County Defendants

DATED: April 3, 2024            MCDOUGAL BOEHMER FOLERY LYON
                                MITCHELL & ERICKSON

                                By: s / Carrie Mitchell
                                Attorneys for Defendant Danalee Pascua

DATED: April 3, 2024            LOTZ, DOGGETT & RAWERS, LLP

                                By: s / Katie Schuler
                                Attorneys Defendants Coast Correctional Medical
                                Group, Mark O'Brien and Friederike Von Lintig

## CERTIFICATION

I, Fernando Kish, hereby certify that the content of this joint brief is acceptable to all parties required to sign this motion.  All parties authorized me to affix their CM/ECF electronic signatures to this pleading.

DATED: April 3, 2024            CLAUDIA G. SILVA, County Counsel

                                By: s/ Fernando Kish
                                Fernando Kish, Senior Deputy
                                Attorneys for County Defendants

- 19 -

20cv2096-LAB-DDL